**In the Matter of JOHN DOE TRADER NUMBER ONE, Appellant.**

No. 89–2697.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1989.

Decided Jan. 25, 1990.

Stephen J. Senderowitz, John R. McLain, and Susan Bogart (argued), Tenenbaum & Senderowitz, Chicago, Ill., for appellant.

James P. Fleissner and Mark D. Pollack (argued), Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., for appellee.

Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

BAUER, Chief Judge.

This case asks us to determine the amount of privacy which is to be afforded the statements of traders in the crowded, boisterous pits of the Chicago Mercantile Exchange. "John Doe Trader Number One" appeals from an order of contempt by the district court for failure to comply with a subpoena *duces tecum*. Doe claims that the subpoena is the product of statements and information gained in violation of Title III, 18 U.S.C. §§ 2510 *et seq.*, and that the subpoena should therefore be quashed. We believe that Doe's statements in the pits of the Exchange were not protected by a reasonable expectation of privacy and therefore we affirm the contempt order of the district court.

## I.

The Special January 1989 Grand Jury is conducting an investigation into possible violations of federal law by persons associated with the Chicago Mercantile Exchange ("CME" or "Exchange") and other futures exchanges in Chicago. As part of the investigation, undercover agents of the Federal Bureau of Investigation ("FBI") posed as traders in the various pits at the Exchange. These agents wore concealed recording devices in their trading jackets, enabling them to record conversations occurring around them.

John Doe Trader Number One ("Doe") is a trader in the Swiss Franc pit of the CME. In January 1989, Doe was served with a

subpoena *duces tecum* calling for him to appear and produce documents including some of his personal trading records before the Grand Jury. In response, Doe filed a motion to quash the subpoena, alleging that it was a product of "illegal interception of oral communications." Doe based this claim on the belief that the tape recordings made by the undercover FBI agents were obtained in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* On February 21, 1989, Chief Judge John F. Grady denied this motion and ordered Doe to appear before the grand jury. Doe appealed to this court and petitioned for a writ of mandamus directed to Judge Grady. We declined to issue such a writ and dismissed the appeal for want of jurisdiction citing *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971).

Subsequently, the government sought and obtained on April 12, 1989, a grant of limited immunity protecting Doe's act of producing the subpoenaed records and documents. The district court then directed Doe to produce these documents consistent with the grant of immunity. Doe again appeared before the grand jury on July 31, 1989, but refused to produce the documents, restating his claim that the subpoena was invalid as a product of unlawful electronic surveillance. The district court then issued a rule to show cause why Doe should not be held in contempt of court.

After receiving briefs and affidavits from the parties, Judge Grady issued a memorandum decision on July 28, 1989, 722 F.Supp. 419, ordering Doe to comply with the subpoena. The court held that the statements recorded by the FBI agents were not "oral communications" under 18 U.S.C. § 2510(2), and further that Doe's statements had not been "intercepted" as defined by that statute.

On July 31, 1989, Doe again refused to produce the specified documents. The district court held Doe in contempt, but stayed execution of the custody order pending appeal to this court.

## II.

Doe raises three issues for consideration on this appeal. First, he claims that the court erroneously held that he had no "reasonable expectation" that his trading floor statements were private. Doe also contends that the district court's decision that no "interception" of his statements had occured is erroneous. Finally, Doe argues that the affidavits provided by the government concerning the investigation and tape recordings were insufficient evidence on which to determine this case and, therefore, he is entitled to an evidentiary hearing on the sufficiency of the affidavits. We will discuss each of these issues in turn. First, however, we note that in reviewing a contempt order we may reverse the lower court only for an abuse of discretion or if the court's decision is clearly erroneous. *Stotler v. Able*, 870 F.2d 1158 (7th Cir.1989).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.*, governs the interception of wire, electronic and oral communications by the government as well as private parties. "Oral communications" are defined under the Act as those statements "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation" 18 U.S.C. § 2510(2). According to the legislative history of Title III, this definition was intended to parallel the "reasonable expectation of privacy" test created by the Supreme Court in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *See* S.Rep. No. 1097, 90th Cong. 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112–2274. *See also United States v. Harrelson*, 754 F.2d 1153 (5th Cir.1985). Thus, Congress limited its protection of "oral communications" under Title III to those statements made where "first, a person [has] exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring). Thus, in order to determine whether

Doe's statements on the floor of the CME were "oral communications" for purposes of 18 U.S.C. § 2510, we must ascertain whether a reasonable expectation of privacy existed with respect to those statements. *See United States v. Willoughby*, 860 F.2d 15, 22 (2nd Cir.1988); *United States v. Pui Kan Lam*, 483 F.2d 1202, 1206 (2nd Cir. 1973).

In *Katz*, the Supreme Court recognized that "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office is not a subject of Fourth Amendment protection." 389 U.S. at 351, 88 S.Ct. at 511. As the Supreme Court has noted, "The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society." *Hoffa v. United States*, 385 U.S. 293, 303, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966), quoting *Lopez v. United States*, 373 U.S. 427, 465, 83 S.Ct. 1381, 1402, 10 L.Ed.2d 462 (1963) (Brennan, J., dissenting).

■ Doe's conversations were overheard on the trading floor of the CME. Appellant himself describes this environment as "typically noisy and frantic." The FBI agent conducting the investigation was clearly present only a few feet from Doe and he was able to overhear and record each of Doe's statements. In fact, the agent was a participant in many of these conversations. The tape recorder concealed on the agent was unable to hear more than the agent himself could. Thus, by exposing these statements to the public in this manner, Doe cannot now contend that he reasonably believed his conversations were private and therefore subject to constitutional protection.

Doe raises several arguments in support of his contention that he reasonably believed that these conversations were private. But *Katz* instructs us that beyond any subjective belief in privacy which Doe might have held, this belief must be one that society would objectively consider to be reasonable in order to justify constitutional protection. 389 U.S. at 360–61, 88

S.Ct. at 516–17. Viewed under this standard, Doe's arguments are less than compelling.

■ Doe implicitly contends that the private nature of the exchange led to his belief that his conversations were protected. Doe points to the security surrounding the Exchange and its membership requirements to support his theory. Yet, it has long been established that a police officer may enter private premises on a ruse or by deception. The planting of undercover officers to discover criminal activity is frequently a necessary and acceptable tool of law enforcement. *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). This court has held that an undercover agent may even record conversations within a target's home if the officer has entered lawfully. *United States v. Eschweiler*, 745 F.2d 435 (7th Cir.1984), *rev'd on other grounds*, 877 F.2d 634 (7th Cir. 1989). A business such as the CME is not provided greater protection than a person's home.

■ Doe also argues that his expectation of privacy was based on the Exchange's rule prohibiting tape recorders on the trading floor. Rule II(H) of the CME Rules provides

II. Conduct.

Commonly accepted standards of propriety and decorum apply to everyone on the Trading Floor. Because the following behavior, speech or actions are inconsistent with those standards, they are expressly prohibited on the Trading floor. . . .

H. Use of radios, television sets, tape recorders (including Walkman–type instruments), cellular telephones or computers, the latter without prior written authorization from the Floor Communications Committee;

As the district court noted, this rule does little to support Doe's expectation of privacy. As framed, the rule is designed to protect "propriety and decorum" not privacy. Included within Section H itself are prohibitions against radios, television sets and other electronic devices along with

tape recorders. This apparently is aimed at various forms of distracting behavior rather than possible invasions of privacy. The provisions of Rule II not cited by appellants reinforce this view. As the district court pointed out, this rule also circumscribes whistling, smoking, eating and drinking, throwing trading cards and profanity. Thus, Rule II(H) seems to codify a level of personal courtesy for the trading floor rather than create any expectation of privacy.

■ Even, however, if Rule II(H) instilled an expectation of privacy in Doe, it would have to be objectively reasonable to merit protection under the fourth amendment. Yet, as the district court found below, "if Doe really did believe the Exchange rule protected him from the recording of his conversations, his belief was naive rather than reasonable." The Supreme Court has long held that an agent can record those conversations which he can hear with his unaided ear. In *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), a pre-Title III case, the Court upheld a conviction for attempted bribery of an Internal Revenue agent. The agent had hidden a tape recorder in his pocket and the defendant claimed this recorded evidence was illegally obtained. The Supreme Court disagreed, however, holding that the mechanical recording of the conversation was no different than an accurate recounting of the defendant's statements. As the Court stated:

> ... this case involves no "eavesdropping" whatever in any proper sense of that term. The Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible ...

> Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without be-

ing beset by corroborating evidence that is not susceptible of impeachment.

*Id.* at 439, 83 S.Ct. at 1388.

The Supreme Court explored this territory once again in *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). In *White*, a government informant wore a concealed tape recorder during conversations with the defendant regarding various narcotics transactions. Following his conviction, defendant objected that the recorded conversations were obtained in violation of his fourth amendment rights. White claimed that although he was aware of the risk of discussing illegal activities with the informant, he should not have expected these discussions would be recorded. The Supreme Court disagreed.

> "If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case."

*White*, 401 U.S. at 751–52, 91 S.Ct. at 1126. In fact, as the Court noted, tape recording will often serve the ends of justice. "An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent." *Id.* at 753, 91 S.Ct. at 1126.[1]

Doe argues, however, that while *Lopez* and *White* involved the recording of consentual, two-party conversations, the subpoena at issue here is based on recording of conversations which the undercover agent merely overheard. Several courts have discussed this issue. In *United States v. Coven*, 662 F.2d 162 (2nd Cir. 1981), the court held that a defendant had no reasonable expectation of privacy in statements made in the presence of a government agent. Thus, a tape recording of those conversations was admissible. The Second Circuit reasoned that because the agent was free to testify about the conversations he had overheard, a record-

---

1. We think it might be a good idea for the government to supply the court and counsel with the make and model number of the listening or recording device. Counsel could then determine for themselves the range of the instrument as it relates to the range of the human ear.

ing of those conversations was also properly admissible. *See also Grandbouche v. Adams*, 529 F.Supp. 545 (D.Colo.1982).

Thus, given this background, we are not prepared to conclude that Doe's expectation of privacy in these recorded statements was objectively reasonable. Doe exposed his discussions to those around him and took the risk that his statements would be overheard and recorded. The environment of the trading floor, the presence of the agent and other traders all indicate that a reasonable expectation of privacy did not exist.

Because we have determined that Doe's statements were not uttered under circumstances justifying an expectation of privacy, these statements cannot be considered "oral communications" for purposes of Title III, 18 U.S.C. § 2510(2). Thus, the district court properly affirmed the grand jury's subpoena *duces tecum* based on these recorded statements.

■ The district court alternatively held that Doe's statements were not "intercepted" for purposes of Title III. Doe also contends that this determination was erroneous. 18 U.S.C. § 2510(4) defines "interception" as:

> the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

Thus, under the terms of Title III, an interception as defined, may only occur if the underlying statements are wire, electronic, or oral communications. Because we find that Doe's statements were not protected by a reasonable expectation of privacy, and therefore, not "oral communications" under 18 U.S.C. § 2510(2), these statements could not have been "intercepted." Thus, by statutory definition, Doe's contention must fail.

■ Finally, Doe challenges the sufficiency of the evidence upon which the district court's contempt order is based. Doe argues that under *United States v. Huebner*, 752 F.2d 1235, 1241 (7th Cir.1985), the government must prove by clear and convincing evidence that Doe's refusal to obey the subpoena was unjustified. By failing to review the recorded statements *in camera* or to hold an evidentiary hearing on the matter, Doe claims, the district court could not have determined that this threshold had been met. We disagree.

According to 18 U.S.C. § 3504,[2] if a grand jury witness properly alleges that certain evidence is inadmissible due to an unlawful act, the government must affirm or deny the occurrence of the alleged act. Illegal electronic surveillence, as alleged by Doe, may constitute such an unlawful act. *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). It is well settled that the government may deny a witness' allegation of unlawful electronic surveillance by submitting an affidavit denying this activity. *See In the Matter of Grand Jury Proceedings of August 1984*, 757 F.2d 108 (7th Cir.1984); *Korman v. United States*, 486 F.2d 926 (7th Cir.1973). In *Korman*, this court held that an affidavit sworn by the prosecutor in charge of the investigation was a sufficient denial of illegal electronic surveillance for purposes of 18 U.S.C. § 3504. *Id.* at 931. More recently in *August 1984 Grand Jury*, we held that while a prosecutor's oral denial of an allegation of unlawful electronic surveillance was insufficient, an affidavit based on the prosecutor's personal knowledge would satisfy the court. 757 F.2d at 115. This court has also noted in *In re DeMonte*, 667 F.2d 590 (7th Cir.1981) that while a district court judge has discretion to provide expanded discovery in "exceptional" cases, the importance of avoiding delay in grand jury proceedings permits limited dis-

**2.** 18 U.S.C. § 3504 provides in relevant part: (a) In any trial, hearing or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States— (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlaw-

ful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act; .... (b) As used in this section "unlawful act" means any act, the use of any electronic, mechanical, or other device (as defined in § 2510(5) of this title) in violation of the Constitution or laws of the United States or standard promulgated pursuant thereto.

covery where appropriate. 667 F.2d at 596–97. *See also United States v. Calandra,* 414 U.S. 338, 349–50, 94 S.Ct. 613, 620–21, 38 L.Ed.2d 561 (1974) (recognizing the importance of expediting the grand jury process.).

Here, in response to Doe's allegation of unlawful activity by the government, the prosecution responded with not one but several affidavits. As in *Korman, DeMonte,* and *August 1984 Grand Jury,* the prosecutor in charge of the investigation submitted an affidavit denying unlawful electronic surveillance. Beyond this, two affidavits were submitted by the FBI verifying the limited nature of the recording. All of the recorded statements were made within the presence of an FBI agent who could hear each of the conversations. Beyond this, the recording device could not detect any sound not audible to the agent himself. The district court was free to pursue more complete discovery if it chose to do so. However, the various affidavits alone were sufficient to conclude that unlawful activity had not taken place. The district court did not abuse its discretion in limiting discovery on this matter and determining that the government had satisfied its burden under 18 U.S.C. § 3504.

### III.

Because Doe's statements on the floor of Chicago Mercantile Exchange were made without a reasonable expectation of privacy, they were neither "oral communications" nor susceptible to "interception" according to the definitions of those terms under Title III, 18 U.S.C. § 2510. Therefore, the warrantless recording of those statements by an FBI agent who could overhear each of those conversations, using equipment less sensitive than his own ear, was not unlawful electronic surveillance. The district court did not abuse its discretion in upholding the grand jury subpoena issued to Doe based on information gained from these recordings. The contempt order of the district court is AFFIRMED.