Brenda WESLEY, Plaintiff,

v.

WISN DIVISION—HEARST CORPO-
RATION; Paul Kronforst; and
Jerome Bott, Defendants.

Civ. A. No. 91–C–1062.

United States District Court,
E.D. Wisconsin.

Nov. 4, 1992.

Barbara Zack Quindel, Perry, Lerner &
Quindel, Milwaukee, Wis., for plaintiff.

Matthew J. Flynn, Quarles & Brady, Mil-
waukee, Wis., for defendants.

### DECISION AND ORDER

REYNOLDS, Senior District Judge.

On August 7, 1992, defendants filed a
motion for summary judgment on plain-
tiff's claims for unlawful surveillance and
invasion of privacy. For reasons stated
below, the motion is granted.

### PROCEDURAL BACKGROUND

In this action, filed October 1, 1991,
plaintiff Brenda Wesley ("Wesley") alleges
that defendants WISN Division—Hearst
Corporation ("WISN"), Paul Kronforst
("Kronforst"), and Jerome Bott ("Bott") re-
corded private communications between
Wesley and another person. The recording

is said to have constituted a violation of the federal Electronic Communications Privacy Act, 18 U.S.C.A. § 2510 *et seq.*, a violation of Wisconsin's surveillance act, Wis.Stat. § 968.31, and an invasion of privacy.

Jurisdiction is based on 28 U.S.C. §§ 1331 and 1367.

## FACTS

Wesley was formerly an account executive at WISN–Radio. While there, she befriended Kim Wasilewski–Fahrenkrug ("Wasilewski–Fahrenkrug"), a WISN traffic reporter. Each had sued the station for employment discrimination, and they spoke frequently about their respective lawsuits and about station management in general. Their conversations often took place at Wasilewski–Fahrenkrug's workplace in the WISN newsroom. Wesley says she and Wasilewski–Fahrenkrug spoke quietly and privately when they discussed the station, dropping the topic when others came near. According to defendants, however, these discussions were fairly easily overheard by others in the newsroom.

Kronforst, a WISN producer, says that in late 1990 Wasilewski–Fahrenkrug began making disparaging comments about WISN talk show hosts. Because she often made the comments shortly before going on the air, there was a danger, Kronforst felt, that they might be accidentally broadcast. He also thought Wasilewski–Fahrenkrug's comments and her general negativity adversely affected her job performance. She disagreed.

Bott, Wasilewski–Fahrenkrug's direct supervisor, was informed of these problems, and he decided, he says, to show her how her on-the-air performance suffered as a result of the comments she was making. He says he planned to do so by taping her comments through the microphone at her workplace, which normally was used for making traffic reports. This plan was implemented by Kronforst, who taped, over a two-day period in March 1991, Wasilewski–Fahrenkrug's comments, as well as any other sounds picked up by her microphone.

One of those sounds was Wesley's voice, according to Wesley. She says the tape,

which Wasilewski–Fahrenkrug found and kept, contains about five minutes of conversation between the two. Defendants contend, however, that it is difficult to tell, due to the garbled quality of the tape, whether Wesley's voice was in fact recorded.

Additional factual information is supplied below.

## ANALYSIS

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To withstand summary judgment, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The court must draw all reasonable inferences from the record in favor of the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989).

Defendants challenge Wesley's federal claim on the ground that the comments they allegedly intercepted were not protected against interception under the Electronic Communications Privacy Act ("ECPA"). The comments were not protected, defendants contend, because Wesley did not have a reasonable expectation that those comments would not be intercepted.

The ECPA imposes criminal and civil liability upon anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1). A civil action against an offender of the ECPA may be maintained by "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentional-

ly used in violation of [the ECPA]." 18 U.S.C. § 2520.

Not every oral communication, as that term is commonly understood, is protected by the ECPA. Rather, the Act guards against the interception of an oral communication only if it is "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). "Interception" refers to "the aural acquisition of the contents of any wire ... or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Defendants contend that an expectation of non-interception can never be justified with respect to any communication louder than a whisper that is made in a "non-private setting." Thus, according to defendants, the ECPA does not prohibit the interception of statements made by Wesley in a newsroom and overheard by others in the newsroom.

█ The inquiry into whether one can reasonably expect to make communications free from interception is analogous to the inquiry into whether one has a reasonable expectation of privacy, as that term is used in the Fourth Amendment context. *In the Matter of John Doe Trade Number One,* 894 F.2d 240, 242 (7th Cir.1990). Thus, an expectation that certain comments are not subject to interception is the equivalent of an expectation of privacy as to those comments; the expectation must be subjectively held and objectively reasonable. *Id.*

█ On the other hand, the concepts of personal privacy and freedom from artificial interception of one's comments are not identical. *Walker v. Darby,* 911 F.2d 1573, 1578–79 (11th Cir.1990). A person might lack a reasonable expectation of privacy, and yet at the same time reasonably expect that his communications were not subject to electronic or mechanical interception. *Id.* (citing *Bianco v. Am. Broadcasting Co.,* 470 F.Supp. 182, 185 (N.D.Ill.1979)). In other words, we do not have to assume that as soon as we leave our homes we enter an Orwellian world of ubiquitous hidden microphones.

In *Walker,* the court held that a letter carrier could reasonably expect that comments he made near his workstation, which was located in an area shared with other workers, were not subject to interception. 911 F.2d at 1579. Neither the "non-private setting" of the workstation, nor the fact that the plaintiff's comments might have been overheard, warranted the conclusion that he should have expected that the comments were "electronically intercepted and monitored in an office in another part of the building." *Id.*

A particular workplace, of course, might put workers in close proximity to one another, and in that situation an expectation of non-interception might not be reasonable. In *John Doe Trader,* for example, the court held that a trader with the Chicago Mercantile Exchange did not have a reasonable expectation of privacy as to comments he made on the floor of the exchange that were recorded by an FBI agent standing "only a few feet" from the trader. 894 F.2d at 243–44. Where, however, an employee has some ability to shield comments from other employees, and makes an effort to do so, the employee's expectation of non-interception may be reasonable.

In this case, Wesley says she and Wasilewski–Fahrenkrug often spoke in "hushed voices," or ceased speaking altogether, to avoid being overheard. (Brenda Wesley Sep. 3, 1992 Aff. at ¶ 2.) Further, the conversations at issue here took place in Wasilewski–Fahrenkrug's work area, which she alone occupied, and which was separated by a partition from the rest of the newsroom. (Sep. 3, 1992 Wasilewski–Fahrenkrug Aff. at ¶ 5.) Thus, the mere possibility that the conversations were overheard does not undermine the reasonableness of Wesley's expectation of non-interception.

There is in this case, however, an additional fact relevant to the reasonableness of that expectation. Wesley spoke to Wasilewski–Fahrenkrug not in an average office or cubicle, but at a radio traffic reporter's workplace. That workplace is unusual

in at least one critical respect: it includes a microphone. Wasilewski–Fahrenkrug's microphone was about six inches long and was located in the middle of her desk; it was "right in front" of her when she sat there. (Sep. 31, 1992 Wasilewski–Fahrenkrug Dep. at 42.) Wesley made the allegedly intercepted comments while standing next to Wasilewski–Fahrenkrug, who was seated at the microphone. (Jan. 28, 1992 Wesley Dep. at 50.)

Kronforst recorded the discussions at Wasilewski–Fahrenkrug's workplace by activating the "cue" function on her microphone. This enabled Kronforst to monitor and tape, from his office on the floor beneath the newsroom, whatever was being said at or near the microphone. The microphone is left in the "on" position to prepare for broadcasting, and apparently one cannot tell from the microphone whether it is in cue. (Pl.'s Br. at 3.) The producer normally uses the cue function shortly before broadcasting to determine that the on-air reporter is ready. Once broadcasting begins, the sounds picked up by the microphone are recorded as a matter of course.

Wesley, who worked on the business side of WISN, says she was not aware of the cue function and was not familiar with the mechanics of the microphone. Even so, certainly she knew there was a microphone on the desk, she knew what it was used for, and she might have even noticed that it was in the "on" position.

Again, Wesley's comments were protected under the ECPA only if she reasonably did not suspect that the comments were "subject to interception." This phrase, the court concludes, does not mean "being intercepted," for rarely would we expect a person to know that the person's voice was in fact being electronically monitored. Nor, however, does the phrase simply mean "capable of being intercepted," for in this age of powerful surveillance technology, most comments probably are.

■ Instead, the court concludes that a communication is "subject to interception"

if it is "readily or practicably capable of being intercepted." That is, if a person should know that the person's comments could be artificially detected without too much trouble, or that the means of artificial detection might actually be in place, the person's expectation of non-interception is not reasonable.

■ A reasonable person in Wesley's position, with no knowledge of the cue function or of a microphone's inner workings, could not have known that her comments were in fact being electronically detected. This court finds, however, that such a person, with a general knowledge of what a broadcast microphone does, would have known that the detection of comments made close to the microphone was a distinct possibility. The microphone and its position should have put Wesley on notice that her comments might be intercepted.

Since there is no factual dispute as to the set-up of Wasilewski–Fahrenkrug's workplace, nor as to Wesley's awareness of the microphone, the court may enter judgment for defendants as a matter of law on Wesley's ECPA claim.[1]

Because the court dismisses plaintiff's federal claim, her state claims also are dismissed, in accordance with *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

IT IS THEREFORE ORDERED that defendants' August 7, 1992 motion for summary judgment is GRANTED.

---

**1.** Defendants also urge dismissal on the ground that their taping of Wesley, to the extent it even occurred, was unintentional and merely inci-

dental to the taping of Wasilewski–Fahrenkrug. The court need not consider this position.