Revised May 4, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10555

_____

DARLIE KEE; DARIN ROUTIER

                              Plaintiffs - Appellants

     v.

CITY OF ROWLETT TEXAS; JIMMY RAY PATTERSON; CHRIS FROSCH;
GREG DAVIS, Assistant District Attorney for Dallas County

                              Defendants - Appellees

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

March 28, 2001

Before KING, Chief Judge, and HIGGINBOTHAM and DUHÉ, Circuit
Judges.

KING, Chief Judge:

     Plaintiffs-Appellants Darlie Kee and Darin Routier appeal

the district court's grant of summary judgment in favor of

Defendants-Appellees the City of Rowlett, police officers Jimmy

Ray Patterson and Chris Frosch, and Assistant District Attorney

Greg Davis.  The district court held that the placement of an

electronic surveillance microphone at an outdoor grave site

memorial service, which intercepted Kee and Routier's communications, did not violate constitutional or statutory rights and therefore did not provide a predicate for their claims under 42 U.S.C. § 1983 and 18 U.S.C. § 2511. The district court reasoned that Kee and Routier failed to demonstrate that they possessed a reasonable expectation of privacy regarding their oral communications at the grave site memorial service. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 1996, Darlie Kee ("Kee") and Darin Routier ("Routier") attended a grave site memorial service for Damon Routier and Devon Routier, two minor children who were murdered on June 6, 1996 in Rowlett, Texas. Kee was the grandmother of the deceased children. Routier was the father of the deceased children. Darlie Routier, the children's mother, was convicted of capital murder for the children's deaths.

Jimmy Ray Patterson and Chris Frosch, police officers in the City of Rowlett (the "City"), were assigned to investigate the murders. As part of the investigation, an electronic surveillance wiretap was placed[1] in a funeral urn in close

---

[1] There is some discrepancy in the record regarding whether Patterson and Frosch were directly responsible for the actual placing of the wiretap in this location. Both Patterson and Frosch state, in their affidavits submitted in support of their summary judgment motion, that they were aware of the investigation into the Routier children's murder. Both claim,

proximity to the children's graves. The officers did not obtain a judicial warrant or court order, nor did they obtain the family's consent before placing the surveillance device at the grave site. However, the officers did obtain permission from the owners of the cemetery to enter and conduct their surveillance.

The grave site at issue was a privately owned plot of land situated in an outdoor and publicly accessible cemetery. The electronic surveillance device consisted of a microphone planted in an urn, which recorded sounds and conversations at the grave site. The microphone recorded the surrounding sounds of the grave site for approximately fourteen hours. Police also videotaped the activities at the grave site.

Due to the notoriety of the murders and the subsequent investigation, the news media and public were aware of the planned memorial service. News reporters from local television stations and newspapers attended and observed portions of the activity at the grave site. Family members, including Kee and

however, that they had circumscribed roles in the direct surveillance activities. In contrast, Kee and Routier allege that Patterson admitted under oath in the state criminal trial of Darlie Kee that he was the lead investigator on the case and that he was involved in planning the surveillance. Furthermore, Kee and Routier point to Frosch's affidavit in which he admitted to obtaining an urn from the cemetery owners, which he understood would be used in the surveillance. Frosch also admitted to discussing the surveillance with the owners of the cemetery.

The district court did not determine the extent of Patterson and Frosch's involvement, finding that even if Patterson and Frosch were involved in the surveillance, no constitutionally significant expectation of privacy was violated. We proceed in similar fashion.

3

Routier, and other invited guests participated in services, prayers, and conversations at the grave site. The summary judgment evidence fails to detail exactly how many people attended the grave site, who was in attendance, whether there was more than one memorial service during the day, when the media observers were present, and what conversations were recorded.[2]

The existence of the surveillance recordings was first discovered by Kee and Routier during the capital murder trial of Darlie Routier. At the trial, Patterson testified to the placement of the microphone surveillance device at the grave site. Patterson also testified that the device was placed in the urn beside the grave site "[i]n case someone went up there and made a confession about what happened." Upon learning about the existence of the surveillance recordings, Kee and Routier brought suit against those individuals and entities allegedly involved in the taping of their conversations.

The complaint sought damages, attorneys' fees, and a declaratory judgment against Patterson and Frosch; Greg Davis, the Assistant District Attorney assigned to the case; and the City (collectively, the "defendants"). The focus of the complaint was limited to those communications and prayers directed toward the deceased children. Specifically, Kee and

---

[2]  Because the district court stayed discovery until the qualified immunity issues were determined, the factual record is limited.

Routier sought damages from Patterson, Frosch, and Davis under 42 U.S.C. § 1983, alleging violations of rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures, and alleging violations of the constitutional right to privacy emanating from the general protections of the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments. Kee and Routier also sought damages under 18 U.S.C. §§ 2510-2522[3] for violation of the federal statutory law that prohibits illegally intercepting oral communications[4] without a warrant. Kee and Routier sought damages from the City under 42 U.S.C. § 1983, alleging that the City failed to properly supervise and train the officers as to the applicable law, and that this failure was a deliberate and intentional act of indifference. Finally, Kee and

---

[3] Kee and Routier claimed a violation of 18 U.S.C. § 2511. Section 2511 provides in relevant part: "(1) Except as otherwise specifically provided in this chapter any person who[:] (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished . . . or shall be subject to suit." 18 U.S.C. § 2511(1)(a) (2000).

In general, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 ("Federal Wiretap Act"), "has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." Forsyth v. Barr, 19 F.3d 1527, 1534 (5th Cir. 1994) (quoting Gelbard v. United States, 408 U.S. 41, 48 (1972)).

[4] Section 2510 defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication." 18 U.S.C. § 2510(2).

5

Routier sought declaratory relief requesting that the actions of the defendants be declared unconstitutional.

In three separate motions, the defendants moved for summary judgment.[5] The district court held that Kee and Routier had not demonstrated that they had a subjective expectation of privacy in their conversations and prayers at the grave site. Further, the district court held that even if Kee and Routier could establish a subjective expectation of privacy, the district court was not prepared to recognize this expectation as objectively reasonable. Finally, the district court found that even if Kee and Routier could demonstrate a subjective and objectively reasonable expectation of privacy, defendants were entitled to qualified immunity on the claims. Because the predicate constitutional violation could not be demonstrated, the district court dismissed

---

[5] Patterson and Frosch moved for summary judgment on the ground that Kee and Routier had failed to demonstrate that a constitutional right had been violated. In the alternative, Patterson and Frosch invoked qualified immunity, arguing that no reasonable police officer would have believed that the officers' actions would have violated the constitutional rights of Kee and Routier.

Davis moved for summary judgment on the ground that Kee and Routier could not allege an actionable federal claim against him personally, because they could not directly connect him to supervising or administering the electronic surveillance. Davis also invoked absolute and qualified immunity because he alleged his actions were taken pursuant to his prosecutorial duties.

The City moved for summary judgment on the ground that Kee and Routier could not demonstrate that they had a constitutionally protected reasonable expectation of privacy and that Kee and Routier could not demonstrate that the City maintained a policy, practice, or custom that authorized its police officers to violate the reasonable expectation of privacy of its citizens.

all of the constitutional and statutory claims against the defendants.

Kee and Routier timely appeal the grants of summary judgment.

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998); see also Tolson v. Avondale Indus., Inc., 141 F.3d 604, 608 (5th Cir. 1998). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). The moving party bears the burden of showing the district court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). "A dispute over a material fact is

7

genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Smith</u>, 158 F.3d at 911 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The substantive law determines which facts are material. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

## III. REASONABLE EXPECTATION OF PRIVACY

The dispositive issue in Kee and Routier's complaint is whether the secret electronic recording of their private prayers and conversations directed at their deceased relatives violated their reasonable expectation of privacy. Their Fourth Amendment and "right to privacy" claims rest on the assumption that they had a constitutionally protected reasonable expectation of privacy regarding their oral communications at the outdoor grave site.[6] Their statutory claims, arising under 18 U.S.C. § 2511,

---

[6] Specifically, Kee and Routier's complaint alleges violations of the Fourth and Fourteenth Amendments: "The Fourth and Fourteenth Amendments protect Plaintiffs from Defendants' unlawful search and seizure. The conduct of Defendants infringes upon the Plaintiffs' personal liberty and privacy rights."

In addition, they allege infringement of their right to privacy under the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments: "The Constitution of the United States protects the Plaintiffs from the Defendants indiscriminate invasion in both their conduct and in their speech. The rights of Plaintiffs to grieve and mourn the loss [of] their close relatives at a grave site service raises very dear and close personal matters which are private and which involve family relationships and are thus protected. The Plaintiffs had a reasonable expectation of privacy during the private grave site funeral and prayer services for Damon and Devon Routier which was violated, without warrant or court order, by the Defendants' conduct described herein."

also are predicated on enjoying a reasonable expectation of privacy in these oral communications.[7]  In similar fashion, the defendants' motions for summary judgment and defenses of qualified immunity are based on the fact that Kee and Routier cannot demonstrate that they ever possessed a reasonable expectation of privacy at the grave site upon which to base their constitutional and statutory claims.  We approach both the constitutional and statutory claims under essentially the same analysis, asking whether Kee and Routier can demonstrate a reasonable expectation of privacy.  Accordingly, our analysis necessarily focuses on this precise question.[8]

---

[7]  Kee and Routier's complaint alleges "the conduct of the Defendants as described [in the complaint] constitutes a violation of 18 U.S.C.A. § 2511, et. seq., chapter 119—Wire and Electronic Communications Interception and Interception of Oral Communications as set forth in Title 119 of the United States Code Annotated.  The Defendants' conduct as described herein is an unlawful interception and/or disclosure of an oral communication as prohibited by 18 U.S.C.A. § 2511, et. seq."  We note that the district court did not specifically address Kee and Routier's § 2511 claims.

[8]  In the instant case, the Fourth Amendment determination of a reasonable expectation of privacy and the federal wiretap analysis overlap.  18 U.S.C. § 2510(2) protects oral communications "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."  18 U.S.C. § 2510(2).  The legislative history of this section demonstrates that Congress intended this definition of oral communication to parallel the reasonable expectation of privacy test set out in Katz v. United States, 389 U.S. 347 (1967).  See S. REP. NO. 90-1097 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2178; United States v. Turner, 209 F.3d 1198, 1200 (10th Cir. 2000); United States v. McKinnon, 985 F.2d 525, 527 (11th Cir. 1993).

A. Reasonable Expectation of Privacy in Oral Communications

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" California v. Ciraolo, 476 U.S. 207, 211 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)); see also Smith v. Maryland, 442 U.S. 735, 740 (1979) ("Consistently with Katz, this Court uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action."). Following the Katz standard,[9] "[o]ur Fourth Amendment analysis embraces two questions. First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he [sought] to preserve [something] as private. . . . Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." Bond v. United States, 529 U.S. 334, 338 (2000) (citations and internal quotations omitted). Therefore, in order to establish a constitutionally protected reasonable expectation of privacy, Kee and Routier must demonstrate both that they had an actual expectation of privacy, based on a showing that they

---

[9]    Katz involved a factual situation in which government agents eavesdropped on conversations in a telephone booth by means of an electronic listening device attached to the top of the booth. See 389 U.S. 347, 351 (1967).

sought to preserve something as private (which we call a subjective expectation of privacy), and that their expectation of privacy is one that society recognizes as reasonable (which we call an objective expectation of privacy).

The district court relied on United States v. Cardoza-Hinojosa, 140 F.3d 610, 615 (5th Cir. 1998), to find that Kee and Routier did not demonstrate a subjective expectation of privacy in their public oral communications.  Cardoza-Hinojosa addressed whether an individual who owned a free-standing shed, which he claimed was used to operate a part-time welding business, had a reasonable expectation of privacy in that structure sufficient to support Fourth Amendment standing to object to the search of the structure.  The court effectively focused on the subjective expectation of privacy component of the test and determined that, under the facts of the case, the defendant did not have a subjective expectation of privacy in the shed and, thus, lacked standing to raise a Fourth Amendment challenge.

Despite the differing, non-real property context of the instant case, the district court adopted the five-factor test set out in Cardoza-Hinojosa and applied it to the prayers and conversations at the public grave site.  The Cardoza-Hinojosa factors to determine an expectation of privacy include: (1) "whether the defendant has a [property or] possessory interest in the thing seized or the place searched," (2) "whether he has a right to exclude others from that place," (3) "whether he has

11

exhibited a subjective expectation of privacy that it would remain free from governmental intrusion," (4) "whether he took normal precautions to maintain privacy," and (5) "whether he was legitimately on the premises." Id. (quoting United States v. Ibarra, 948 F.2d 903, 905 (5th Cir. 1991)).[10] While we find these factors informative, we ultimately conclude that they provide an imprecise framework to judge an individual's subjective expectation of privacy in the context of oral communications.

Our difficulty in applying the Cardoza-Hinojosa factors to oral communications is that a subjective expectation of privacy in oral communications may, but does not necessarily, turn on the physical characteristics of the place or property in which the speech takes place. In fact, Katz clearly shifts the constitutional protection beyond conceptions based on property to focus on the individual's privacy interests. See Katz, 389 U.S. at 351 ("[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (citations omitted)); see also United States v. Jackson, 588 F.2d

---

[10] Like Cardoza-Hinojosa, Ibarra involved the question whether defendants had standing to contest the search of a physical structure, specifically a house. See Ibarra, 948 F.2d at 906.

12

1046, 1052 (5th Cir. 1979) ("No matter where an individual is, whether in his home, a motel room, or a public park, he is entitled to a 'reasonable' expectation of privacy." (citing Katz, 389 U.S. at 359) (Douglas, J., concurring)).

Thus, while appropriate to determine the expectation of privacy in the context of searches of physical real property, the Cardoza-Hinojosa factors fail to engage the more difficult questions arising from oral communications, especially those communications that occur in areas accessible to the public. See Katz, 389 U.S. at 352 ("[W]hat [Katz] sought to exclude when he entered the booth was not the intruding eye — it was the uninvited ear. He did not shed his right to do so simply because he made his calls from a place where he might be seen."); see also United States v. Smith, 978 F.2d 171, 179 (5th Cir. 1992) ("Courts should bear in mind that the issue is not whether it is conceivable that someone could eavesdrop on a conversation but whether it is reasonable to expect privacy."). To be clear, our concern with the district court's determination is simply one of emphasis; we find that the third and fourth factors, namely whether Kee and Routier "exhibited a subjective expectation of privacy that [their communications] would remain free from governmental intrusion" and whether they "took normal precautions to maintain privacy" are the dispositive considerations in the

context of the public conversations and prayers at issue in this case.[11]

In explicating these two factors, we are guided by analogous cases involving the reasonable expectation of privacy afforded to oral communications in the eavesdropping and wiretap contexts. Primarily, courts have looked to considerations such as (1) the volume of the communication or conversation[12]; (2) the proximity

---

[11] Applying the Cardoza-Hinojosa factors to the factual situation in Katz demonstrates the appropriateness of this shift in emphasis. For example, Katz had a negligible property or possessory interest in the telephone booth; did not have an enforceable right to exclude others from the property; and while legitimately on the premises, did not gain an expectation of privacy from that position. Instead, the constitutional protections stemmed from the fact that he subjectively expected his conversations to be private and that he took the normal precautions available to him to call from inside a booth.

[12] See, e.g., United States v. Smith, 978 F.2d 171, 177 (5th Cir. 1992) (citing United States v. Burns, 624 F.2d 95, 100 (10th Cir. 1980), for the proposition that a loud conversation in hotel room that could be heard in adjoining rooms precluded a finding of a reasonable expectation of privacy); Walker v. Darby, 911 F.2d 1573, 1579 (11th Cir. 1990) (finding a question of fact, sufficient to defeat summary judgment, in whether defendant's conversations were electronically intercepted in a manner that invaded a reasonable expectation of privacy); United States v. Agapito, 620 F.2d 324, 329 (2d Cir. 1980) (finding that conversations loud enough to be heard by others in an adjoining room to undermine a reasonable expectation of privacy); Wesley v. WISN Div.- Hearst Corp., 806 F. Supp. 812, 814 (E.D. Wis. 1992) (finding evidence that plaintiffs talked in "hushed voices" or "ceased speaking altogether, to avoid being overheard" relevant to determine reasonable expectation of privacy); Kemp v. Block, 607 F. Supp. 1262, 1264 (D. Nev. 1985) (finding no reasonable expectation of privacy because plaintiff argued in a loud voice that could be overheard by coworkers).

or potential of other individuals to overhear the conversation[13]; (3) the potential for communications to be reported[14]; (4) the affirmative actions taken by the speakers to shield their privacy[15]; (5) the need for technological enhancements to hear

_____

[13] See, e.g., In re John Doe Trader Number One, 894 F.2d 240, 243 (7th Cir. 1990) (finding no reasonable expectation of privacy for comments made on the trading floor of the Chicago Mercantile Exchange because of the large number of people present); Kemp, 607 F. Supp. at 1264 (finding that the presence of coworkers undermined any reasonable expectation of privacy); But see Burns, 624 F.2d at 100 (reasoning that Katz could reasonably assume that "uninvited ears" were not listening . . . "because the unimpaired vision that attends use of a transparent phone booth afforded him the reasonable conclusion that no listener was in the vicinity"); United States v. McIntyre, 582 F.2d 1221, 1224 (9th Cir. 1978) (finding reasonable expectation of privacy in conversations that took place in an office, even though the door to the office was open and coworkers were present).

[14] See, e.g., United States v. White, 401 U.S. 745, 749 (1971) (finding that individuals take the risk that their conversations will be reported to authorities); Hoffa v. United States, 385 U.S. 293, 302 (1966) ("The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society." (internal quotations and citations omitted)); United States v. Longoria, 177 F.3d 1179, 1183 (10th Cir. 1999) (concluding that defendant "had no reasonable expectation that the person in whose presence he conducts conversations will not reveal those conversations to others. He assumed the risk that the informant would reveal his incriminating statements to law enforcement."); see also John Doe Trader Number One, 894 F.2d at 243; McIntyre, 582 F.2d at 1224.

[15] See, e.g., Katz, 389 U.S. at 363, n* (White, J., concurring) ("[A]s the Court emphasizes the petitioner 'sought to exclude the uninvited ear.'"); Smith, 978 F.2d at 177 ("While it is true that the right to privacy in a personal conversation is generally a reasonable expectation, the actions of the parties to the conversation may reduce this expectation to the point that it is no longer 'reasonable'"); see also, e.g., Dorris v. Absher, 179 F.3d 420, 424 (6th Cir. 1999) ("The conversations took place only when no one else was present, and stopped when the telephone

15

the communications[16]; and (6) the place or location of the oral

communications as it relates to the subjective expectations of

---

was being used or anyone turned onto the gravel road that was the only entrance to the office.  The record thus indicates that the employees took great care to ensure that their conversations remained private."); Kemp, 607 F. Supp. at 1264 ("The subjective expectation of privacy may be tested by any outward manifestations by the plaintiff that he expected his discussion with Mr. Roy in the instrument shop to be free from eavesdroppers.  A comparison of what precautions he took to safeguard his privacy interest with the precautions he might reasonably have taken, is appropriate.").

[16] Compare Jackson, 588 F.2d at 1051 ("Employing the privacy interest analysis approved in Katz, we hold that these appellants had no justifiable expectations of privacy with respect to their motel room conversations which were audible to the unaided ears of the government agents lawfully occupying an adjoining room."); John Doe Trader Number One, 894 F.2d at 244 ("The Supreme Court has long held that an agent can record those conversations which he can hear with his unaided ear."), and Kemp, 607 F. Supp. at 1264 ("One of the tests used is to ascertain whether the defendant overheard the communication with the naked ear under uncontrived circumstances."), with Agapito, 620 F.2d at 330 n.7 ("The absence of electronic eavesdropping of course is significant.  As Justice Brennan has pointed out: There is a qualitative difference between electronic surveillance . . . and conventional police strategems such as eavesdropping." (citations and internal quotations omitted)), United States v. Eschweiler, 745 F.2d 435, 437-38 (7th Cir. 1984) (interpreting Agapito to "suggest that an undercover agent who uses amplifying equipment to overhear conversations in other rooms that would have been inaudible to his naked ear invades interests protected by the Fourth Amendment"), and United States v. Mankani, 738 F.2d 538, 543 (2d Cir. 1984) ("[T]he Fourth Amendment protects conversations that cannot be heard except by means of artificial enhancement.").

The Court in Katz recognized this tension.  On one hand Justice Harlan explained that persons having "conversations in the open could not be protected from being overheard," but that same person holding a conversation in a telephone booth did have a reasonable expectation not to have that conversation electronically "intercepted."  See Katz, 389 U.S. at 361 (emphasis added).

16

the individuals who are communicating.[17]  We agree that these considerations help us develop, but do not define, a set of nonexclusive factors to evaluate the subjective expectation of privacy in oral communications in publicly accessible spaces.[18] See O'Connor v. Ortega, 480 U.S. 709, 718 (1987) (recognizing in the context of work environments that determinations of a "reasonable expectation of privacy must be addressed on a case-by-case basis"); United States v. Smith, 978 F.2d 171, 180 (5th

_____

[17]  See, e.g., Minnesota v. Carter, 525 U.S. 83, 88 (1998) ("The Fourth Amendment protects people, not places.  But the extent to which the Fourth Amendment protects people may depend upon where those people are." (citations and internal quotations omitted)); Mankani, 738 F.2d at 542 ("Of course, the fact that people are protected does not mean that place has no bearing on one's reasonable expectation of privacy.  Plainly it does.  Those who claim their privacy has been unlawfully invaded do not live in a vacuum."); Burns, 624 F.2d at 100 ("Legitimate privacy expectations cannot be separated from a conversation's context. Bedroom whispers in the middle of a large house on a large, private tract of land carry quite different expectations of privacy, reasonably speaking, than does a boisterous conversation occurring in a crowded supermarket or subway."); McIntyre, 582 F.2d at 1224 (finding "[a] business office need not be sealed to offer its occupant a reasonable degree of privacy"); see also, e.g., United States v. Harrelson, 754 F.2d 1153, 1169-70 (5th Cir. 1985) (finding no legitimate expectation of privacy for conversations held in a prison setting); United States v. McKinnon, 985 F.2d 525, 528 (11th Cir. 1993) (holding that defendant did not have a reasonable expectation of privacy for communications initiated in the back seat of a police car).

[18]  Therefore, as was discussed in oral argument, while two federal judges may have a reasonable expectation of privacy in a hushed conversation on the courthouse steps, they might lose that expectation of privacy if they spoke loudly, if they were surrounded by people who could eavesdrop, if one of the judges reported the conversation to authorities, if either party otherwise took actions that would expose the confidentiality of their communications, or if they failed to take any affirmative steps to shield their privacy.

17

Cir. 1992) ("Any determination of the reasonableness of an individual's expectation of privacy is necessarily fact intensive.").  Having determined a more appropriate framework to analyze the facts before us, we turn to the instant case.

## B. The Failure to Demonstrate Sufficient Facts to Establish a Subjective Expectation of Privacy

Under the summary judgment standard, Kee and Routier must demonstrate that a genuine issue of material fact exists as to their reasonable expectation of privacy in their oral communications.  "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."  Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 505 (5th Cir. 1999).  Applying the nonexclusive framework set out in Part III.A, we find that Kee and Routier have failed to meet this burden, because they have provided insufficient evidence in their affidavits and pleadings to show that they had a subjective expectation of privacy.

In their affidavits, Kee and Routier assert that their "grieving conversations and statements" and "oral prayers and communications to ourselves and our God" should be private and not subject to government wiretaps.  These statements, alone,

18

cannot sustain the weight of Kee and Routier's burden in establishing that they had a subjective expectation of privacy. See Lawrence v. Univ. of Tex. Med. Branch, 163 F.3d 309, 311–12 (5th Cir. 1999) ("[T]he non-moving party must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither unsubstantiated assertions nor conclusory allegations can satisfy the non-moving party's burden." (citations, footnote, and internal quotations omitted)).

For example, Kee and Routier adduced no evidence regarding the context of the communications that they now seek to characterize as private. They do not argue that the prayers were hushed or that their voices were modulated to protect their conversations from "uninvited ears," and they have provided no information about the tone, volume, or audibility of the private communications directed toward the graves. They do not specify which conversations were conducted in a manner inaudible to others and provide no information about who was present and to whom their conversations were directed. As knowledge of these important facts is well within the control of Kee and Routier, the failure to include this information in their affidavits undermines any claim of an expectancy of privacy.

In similar fashion, Kee and Routier do not assert that their oral statements were communicated free from the possibility of eavesdroppers who might have been in close proximity to the grave

19

site.  In fact, the defendants have submitted evidence to demonstrate that the grave site services were attended by representatives of the media and that third parties were in close proximity to the grave site.  Kee and Routier simply fail to respond to this argument that potentially would eviscerate a subjective expectation of privacy.  Furthermore, they provide us with no particularized information regarding their activities vis-à-vis the other people known to be at the cemetery and, thus, fail to provide information necessary to find that they had a subjective expectation of privacy.[19]

Perhaps most damaging to Kee and Routier's argument is that they failed to present evidence demonstrating any affirmative steps taken to preserve their privacy.  While it is apparent from their affidavits that they did not expect government agents surreptitiously to be recording their prayers, they also were aware that the service was being conducted in an outdoor setting.  Kee and Routier fail to allege that they took any steps to ensure that unwanted individuals were excluded or that they did anything to preserve the private nature of the service.  They point to no reasonable safeguards or common-sense precautions taken to preserve their expectation of privacy.

---

[19]  Following the nonexclusive factors set out in Part III.A, we note that there is no allegation that anyone at the grave site service reported the incident to authorities.  This consideration is, therefore, irrelevant to our analysis.

20

The strongest argument presented by Kee and Routier is that the surveillance was accomplished through the use of technological enhancements. This is a case in which the information possibly was not audible to the "unaided ear." See United States v. Jackson, 588 F.2d 1046, 1052 (5th Cir. 1979).[20] This is also a case in which the use of technological enhancements potentially could reveal "intimate details." See United States v. Ishmael, 48 F.3d 850, 855 (5th Cir. 1995) ("The crucial inquiry, as in any search and seizure analysis, is whether the technology reveals 'intimate details.'" (quoting Dow Chem. v. United States, 476 U.S. 227, 238 (1986))). Despite these factors, however, for Kee and Routier to meet the burden at the summary judgment stage they must demonstrate more than the fact that technology was used for surveillance purposes. They also must show that a factual question exists as to a violation of their subjective expectation of privacy due to that technology. While this possibility may be increased when technological enhancements such as wiretaps are used, the vague affidavits put forth in support of this contention are insufficient in the case at hand.

Finally, Kee and Routier provide almost no information regarding the physical layout or location of the grave site where the prayers or conversations took place. For example, no

---

[20] See supra note 16.

information is provided about the privately owned burial plot in relation to the rest of the cemetery.  Kee and Routier have presented no information regarding the grave site's proximity to the entrance of the cemetery, or regarding whether the public was prevented from accessing the grave site or whether the grave site was secluded by other graves or natural objects, such as trees or bushes.  In contrast, the defendants assert that the conversations took place in the open air of a publicly accessible cemetery and that there were no barriers to prevent individuals, such as the assembled media and onlookers, from observing the activities.[21]  Again, Kee and Routier have failed to meet their summary judgment burden to demonstrate that an issue of material

---

[21]  The fact that the prayers and conversations took place in an outdoor publicly accessible space is a difficult hurdle for Kee and Routier to overcome.  While neither party briefed the issue, we note a possible overlap between the "open fields" doctrine, which is well-established in Fourth Amendment jurisprudence and the instant case.  However, the open fields doctrine has not been expanded beyond observational searches. See Husband v. Bryan, 946 F.2d 27, 29 (5th Cir. 1991) ("Neither this court nor the Supreme Court have extended the open fields doctrine to anything beyond observation searches."); Allinder v. Ohio, 808 F.2d 1180, 1184 (6th Cir. 1987); but see United States v. Ishmael, 48 F.3d 850, 855 (5th Cir. 1995) (applying open fields doctrine to observation based on thermal imaging technology).  We decline to engage the issue without briefing, but simply note that Katz supports an argument that the fact of visual observation does not necessarily control the reasonableness of the privacy expected for oral communications. In short, the open fields approach cannot automatically be adopted for use in the oral communications context.  The openness of the place where the oral communications are spoken, however, may be a significant factor countenancing against finding a reasonable expectation of privacy.

fact exists as to whether their subjective expectation of privacy was violated.

Because we agree with the district court that no <u>subjective</u> expectation of privacy was established on the facts presented, we affirm the grants of summary judgment.  As such, we do not reach the question whether individuals such as Kee or Routier could have an objectively reasonable expectation of privacy at a grave site burial service under different facts or whether the individual defendants would have qualified immunity in such a situation.  Further, because our holding rests on Kee and Routier's failure to demonstrate their subjective expectation of privacy, we do not reach the question whether, in other circumstances, officers would be required to obtain judicial approval for a wiretap pursuant to 18 U.S.C. § 2511.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment in favor of all defendants.