**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ABEL LONGORIA,

     Defendant-Appellant.

No. 98-3022

---

**Appeal from the United States District Court**
**for the District of District of Kansas**
**(D.C. No. 97-CR-20034-06)**

---

Leon J. Patton (Jackie N. Williams, United States Attorney, with him on the brief), Assistant United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee.

James T. George, Lawrence, Kansas, for Defendant-Appellant.

---

Before **BRORBY, McKAY** and **EBEL**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Defendant-Appellant Abel Longoria appeals the district court order dismissing his motion to suppress certain audio and video taped conversations

between Mr. Longoria and his co-defendants. Mr Longoria argues the tapes, recorded by a government informant, are inadmissible because the government recorded the conversations without the prior court approval required under Title III of the Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. §§ 2510 - 2522. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

Federal agents, with the help of a confidential informant, conducted a lengthy investigation of a drug smuggling operation centered in Kansas City, Kansas. The smuggling operation transported drugs from Mexico to the Kansas City metropolitan area via airtight metal containers placed inside the tires and gas tanks of vehicles. The government's informant owned a tire shop in Kansas City at which Mr. Longoria and his co-defendants allegedly unloaded drug shipments and conducted drug transactions. Under FBI supervision, the informant surreptitiously recorded conversations occurring at the tire shop on video and audio tape. The tapes not only captured conversations between Mr. Longoria and the informant, but also recorded Mr. Longoria conversing with his co-defendants in the informant's presence.[1] Based on these recordings and other information

---

[1] In his motion to suppress and on appeal, Mr. Longoria only argues for the suppression of the tape recorded conversations between himself and his co-defendants. He does not contest admission of the conversations between himself

-2-

provided by the informant, a grand jury indicted Mr. Longoria and his co-defendants on various drug-related offenses.  Mr. Longoria subsequently pleaded guilty to one count of conspiring to distribute cocaine and marijuana in violation of 21 U.S.C. § 846.  The district court sentenced him to seventy months imprisonment and imposed a $100 assessment.

## II. The Motion to Suppress

Prior to entering the plea agreement, Mr. Longoria moved to suppress certain audio and video tapes recorded by the government's informant, arguing they violated Title III of the Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. §§ 2510 - 2522 ("Title III" or "the Act").  Title III governs the interception of wire, electronic and oral communications by the government and private parties.  Specifically relevant to this case, Title III defines the manner in which law enforcement personnel and persons working under color of state law, such as an informant, may conduct electronic surveillance and whether or not a prior court order is required.  *See* 18 U.S.C. §§ 2510, 2511, 2516.  Wire and oral communications intercepted in violation of Title III may not be received in evidence DURING any trial, hearing, or other proceeding before any court.  18

and the informant.

U.S.C. § 2515.

Title III only regulates the interception of certain types of communications; and, in order to receive Title III's protections, the communication at issue must fall within the definitions set out in § 2510 of the Act. *See generally* 1 James G. Carr, The Law of Electronic Surveillance § 3.2 (1998) (discussing the limited reach of definitions in Title III). Oral communications protected by Title III are those communications "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). The legislative history of Title III instructs that Congress intended this definition to parallel the "reasonable expectation of privacy test" articulated by the Supreme Court in *Katz v. United States*, 389 U.S. 347 (1967). *See* S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2177-97 at 2178. Accordingly, for Title III to apply, the court must conclude: (1) the defendant had an actual, subjective expectation of privacy – *i.e.,* that his communications were not subject to interception; and (2) the defendant's expectation is one society would objectively consider reasonable. *Katz*, 389 U.S. at 361 (Harlan, J., concurring); *see also In re John Doe Trader Number One*, 894 F.2d 240, 242-43 (7th Cir. 1990) (applying *Katz* in the Title III context).

In this case, the government's informant overheard and recorded Mr. Longoria conversing with his co-defendants in Spanish – a language the informant did not understand. In his motion to suppress and on appeal, Mr. Longoria argues he knew the informant could not understand Spanish and, therefore, he had a reasonable expectation of privacy. As such, Mr. Longoria contends the conversations with his co-defendants in Spanish were "oral communications" within the meaning of Title III and the government's failure to obtain court approval prior to recording the conversations warrants suppression. The district court disagreed, finding Mr. Longoria had no reasonable expectation of privacy in his conversations in the presence of the informant. *United States v. Torres*, 983 F. Supp. 1346, 1352 (D. Kan. 1997). Without such an expectation, the court concluded the conversations were not oral communications protected by Title III and denied the motion to suppress. *Torres*, 983 F. Supp. at 1352.

We review the district court's findings of fact for clear error, *United States v. De la Cruz-Tapia*, 162 F.3d 1275, 1277 (10th Cir. 1998), and the court's ultimate determination whether society would recognize the defendant's subjective expectation of privacy de novo. *United States v. Benitez-Arreguin*, 973 F.2d 823, 827 (10th Cir. 1992).

III.  Discussion

As discussed above, to determine if the conversations at issue constitute "oral communications" under Title III, we must consider whether (1) Mr. Longoria had an actual, subjective expectation of privacy and (2) whether that expectation is one that society is willing to recognize as reasonable.  *See Katz*, 389 U.S. at 361 (Harlan, J., concurring).  The district court made no specific findings as to the first issue.  Nevertheless, based on Mr. Longoria's undisputed assertion that he had such an expectation, we assume for the purposes of this appeal Mr. Longoria did have an actual, subjective expectation of privacy.  Thus, the key issue remaining is whether or not Mr. Longoria's expectation that the confidential informant would not disclose the substance of his conversation is one which society would objectively consider reasonable.  We do not believe it is.

The Supreme Court has recognized that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."  *Cf. Katz*, 389 U.S. at 351; *United States v. Burns*, 624 F.2d 95, 100 (10th Cir.) ("What a person knowingly exposes is not constitutionally protected from observation."), *cert. denied*, 449 U.S. 954 (1980).  If a person knowingly exposes statements to the "plain view of outsiders," such statements are not protected under the Fourth Amendment because the speaker has

not exhibited an "intention to keep them to himself." *Katz*, 389 U.S. at 361 (Harlan, J., concurring); *see also Burns*, 624 F.2d at 100 (concluding the Fourth Amendment provides no protection for conversations overheard by law enforcement officers from a vantage point they rightfully occupy). As the Court noted, "'[t]he risk of being overheard ... is ... inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak.'" *Hoffa v. United States*, 385 U.S. 293, 303 (1966) (quoting *Lopez v. United States*, 373 U.S. 427, 465 (1963) (Brennan, J., dissenting)).

This principle applies with equal force to statements knowingly exposed to government informants. *Hoffa*, 385 U.S. at 302-03. In *Hoffa*, defendants knowingly conversed with and in front of a man they believed to be an trusted accomplice but who in fact was a government informant. *Id.* at 295. The Court allowed the informant to testify to conversations he overheard, noting the Fourth Amendment offers no protection for "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Id.* at 302. Thus, one contemplating illegal activities assumes the risk that his companions may be reporting to the police and has no reasonable expectation of privacy in conversations he knowingly exposes to them. *Id.*; *United States v. White*, 401 U.S. 745, 752 (1971).

In this case, Mr. Longoria voluntarily entered the informant's tire shop and knowingly made incriminating statements in the informant's presence. Although the conversations occurred in a back room not accessible to the general public, it is clear Mr. Longoria spoke in a tone clearly audible by the informant.[2] Because Mr. Longoria exposed his statements in such a manner, we conclude he had no reasonable expectation that the person in whose presence he conducts conversations will not reveal those conversations to others. He assumed the risk that the informant would reveal his incriminating statements to law enforcement. As such, the informant was free to report the contents of the conversations to the FBI and to testify regarding them. *Hoffa*, 385 U.S. at 302-03; *White*, 401 U.S. at 751 ("[A] police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights.").

---

[2] We emphasize that "the Fourth Amendment protects people, *not places*." *Katz*, 389 U.S. at 351 (emphasis added). If a defendant such as Mr. Longoria knowingly exposes his conversations to accomplices, even in a room not accessible to the general public, his conversations are not subject to Fourth Amendment protection from disclosure by such accomplices. *Id.; see also Hoffa*, 385 U.S. at 302 (finding no expectation of privacy in conversations knowingly conducted in the presence of a government informant even though the conversations occurred in a hotel suite).

Mr. Longoria argues he had a reasonable expectation of privacy because he spoke in Spanish. Essentially, Mr. Longoria contends he did not "knowingly expose" his conversations to the informant because he spoke in a language he believed the informant could not understand. However, we find no precedent recognizing expectations of privacy based on a listener's ability to comprehend a foreign language and decline to find such an expectation in this case for several reasons. First, comprehension is a malleable concept not easily measured by either the defendant or the court. Attempting to delineate a standard based on subjective evaluations of linguistic capabilities would be unworkable to say the least. *Cf. United States v. Fisch*, 474 F.2d 1071, 1077 (9th Cir.) (refusing to categorize expectations of privacy based on "hair-splitting distinctions" in the degree of audibility of the conversation), *cert. denied*, 412 U.S. (1973). More important, we do not find such an expectation to be objectively reasonable. In our increasingly multilingual society, one exposing conversations to others must necessarily assume the risk his statements will be overheard *and* understood. Although Mr. Longoria contends he knew the informant could not understand Spanish, the informant very well may have concealed his ability to speak Spanish the same as he concealed the recording equipment and his allegiance with law enforcement. Mr. Longoria exposed his statements by speaking in a manner clearly *audible* by the informant. His hope that the informant would not fully

understand the contents of the conversation is not an expectation "society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 361 (Harlan, J., concurring).

Having thus established that Mr. Longoria had no reasonable expectation of privacy in statements made in the informant's presence, the admissibility of tape recordings of the same conversations becomes apparent. In *White*, the Supreme Court held "[i]f the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent." 401 U.S. at 751. The Court emphasized that one contemplating illegal activities assumes the risk that his companions will report to the police, either directly or via electronic recording. *Id.* at 752. "If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case." *Id.*

Accordingly, Mr. Longoria had no reasonable expectation that his

conversations would not be "subject to interception" by his accomplices.[3] 18 U.S.C. § 2510(2); *see Siripongs v. Calderon,* 35 F.3d 1308, 1320 (9th Cir. 1994) (concluding defendant had no expectation of privacy in conversations conducted in Thai in the presence of a police officer), *cert. denied*, 513 U.S. 1183 (1995); *In re Matter of John Doe Trader*, 894 F.2d at 243-44 (holding defendant had no reasonable expectation of privacy in conversations conducted on trading floor in presence of government agent); *United States v. Coven*, 662 F.2d 162, 173 (2d Cir. 1981) (holding defendant had no reasonable expectation of privacy in conversations conducted in informant's presence)*, cert. denied*, 456 U.S. 916 (1982)*.* He assumed the risk that his conversations would be overheard and recorded by the informant. *See In re John Doe Trader*, 894 F.2d at 245 ("Doe exposed his discussions to those around him and took the risk that his statements would be overheard and recorded."). As such, the conversations were not "oral communications" protected by Title III and the district court property denied Mr. Longoria's motion to suppress. The order of the district court is **AFFIRMED**.

---

[3] Interception under Title III means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).