**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 18 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DEAN ALLEN TURNER,

Defendant - Appellant.

No. 99-8057

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 99-CR-01-D)**

---

James H. Barrett, Assistant Federal Defender, Cheyenne, Wyoming, for appellant.

James C. Anderson, Assistant United States Attorney (David D. Freudenthal, United States Attorney, with him on the brief), Cheyenne, Wyoming, for appellee.

---

Before **BRISCOE** , **ANDERSON** , and **LUCERO** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

Dean Allen Turner entered a conditional plea of guilty to one count of

being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1),

and was sentenced to sixty-two months imprisonment and three years supervised release. He appeals the district court's denial of his motion to suppress his conversation with a companion recorded in the back seat of a highway patrol car. Turner argues that the interception of his conversation by a concealed tape recorder violated 18 U.S.C. §§ 2510-2522 [1] because he had a reasonable expectation that a conversation in a patrol car would be private. For the reasons stated below, we affirm.

## BACKGROUND

On November 7, 1998, Wyoming Highway Patrolman Joe Ryle stopped Turner's car on state highway 85 because he observed a severe crack in the windshield and front end damage affecting a headlight. Upon request, Turner produced a driver's license and registration, but not proof of insurance. Ryle asked Turner to accompany him to the patrol car to discuss the reason for the stop. While in the front seat of the patrol car, Turner told Ryle that he was currently on parole.

Ryle returned Turner's documents and issued Turner a citation for not having proof of insurance. He asked Turner if he had any drugs, guns, or large

---

[1]Turner also alleges a violation of Wyo. Stat. §§ 7-3-601 to 611, which parallels the federal statute. Wyoming law does not control here; but, in any event, for the reasons stated below we find no violation.

amounts of cash in the car. Turner replied, "no." R. Vol. II at 11. Ryle then asked for and received Turner's consent to search his car. See id. Ryle asked Turner to sit in the back of the patrol car "for safety reasons," while Ryle conducted the search. Id. at 44. Ryle went back to Turner's car, asked the passenger, Crystal Grooms, to exit the vehicle, and received her consent to search the car. Ryle told her that she could remain outside, "but it was safer if she sat in the [patrol] vehicle." Id. at 14-15. Grooms then joined Turner in the back of the patrol car, leaving the door slightly open. Unknown to them, Ryle had activated a tape recorder with a microphone installed between the patrol car's roll bar and roof. The microphone recorded the conversation between Turner and Grooms while Ryle made a cursory search of Turner's car.

Following the search, Ryle asked Turner and Grooms to return to their car. He then retrieved and played back the recording of their conversation. Ryle testified [2] that on the recording, "I heard Ms. Grooms state that he's going to find the guns; and I heard Mr. Turner say . . . no, he's not; he's not going to spend the time looking through all of that stuff [in the car]." Id. at 20. Turner testified that Ryle accurately described the conversation. See id. at 46. About this time, dispatch informed Ryle that Turner was on parole for aggravated robbery. Ryle

---

[2]Ryle recorded over the conversation because he had only one tape; thus, the recording in question was not available as evidence.

called for backup since, as a felon, Turner could not lawfully possess a gun. When another officer arrived, Ryle handcuffed Turner and told him that he was being detained. Ryle took Turner and his car to the sheriff's office, where a search of the car revealed four firearms and a small quantity of marijuana. Ryle arrested and Mirandized Turner, at which time Turner admitted he owned the guns.

The district court held a hearing on February 24, 1999, to consider Turner's motion to suppress his statements and the physical evidence seized from the vehicle. [3] On March 1, 1999, the district court denied the motion. [4]

## ANALYSIS

"When reviewing an order granting or denying a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and view the evidence in the light most favorable to the district court's findings." United States v. Elliot, 107 F.3d 810, 813 (10th Cir. 1997). We review de novo "the court's ultimate determination whether society would recognize the defendant's

---

[3] The parties agreed that if the court found the recording was proper, "then that recording gives Patrolman Ryle probable cause to go ahead and search the vehicle thereafter." R. Vol. II at 7.

[4] A March 9, 1999, written order incorporated the oral ruling by reference.

-4-

subjective expectation of privacy." United States v. Longoria, 177 F.3d 1179, 1182 (10th Cir. 1999).

Turner argues that the recording of his conversation in the patrol car violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 ("Title III"). Title III governs the interception by the government and private parties of wire, electronic, and oral communications. A court may not admit as evidence any protected oral communications intercepted in violation of Title III. See 18 U.S.C. § 2515.

Title III protects oral communications "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). The legislative history of Title III shows that Congress intended this definition to parallel the "reasonable expectation of privacy test" articulated by the Supreme Court in Katz v. United States, 389 U.S. 347 (1967). See S. Rep. No. 90-1097 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2178; see also Longoria, 177 F.3d at 1181. In Longoria, we stated that "for Title III to apply, the court must conclude: (1) the defendant had an actual, subjective expectation of privacy—i.e., that his communications were not subject to interception; and (2) the defendant's expectation is one society would objectively consider reasonable." 177 F.3d at 1181-82 (citing Katz, 389 U.S. at 361 (Harlan, J., concurring)).

Because the government stipulated that Turner had a subjective expectation of privacy, see R. Vol. I, Doc. 19 at 4 n.1, we need only address the second, objective prong:  whether society would consider Turner's expectation of privacy to be reasonable.  We conclude that under Title III or the Fourth Amendment, [5] society is not prepared to recognize an expectation that communications in a patrol car, under facts presented here, are not subject to interception.     See United States v. McKinnon, 985 F.2d 525, 527 (11th Cir. 1993) (no "reasonable or justifiable expectation of privacy for conversations . . . held while seated in the back seat area of a police car");    United States v. Clark, 22 F.3d 799, 802 (8th Cir. 1994) ("allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society").

Turner argues that his expectation of privacy is reasonable because of the circumstances:  he was not in custody or being threatened with arrest, and the officer deliberately represented the car as a safe haven.  We are not persuaded that either consideration is controlling.     A police car is an official vehicle, used here for law enforcement purposes.  We agree with the Eleventh Circuit in McKinnon that whether an individual is in custody does not materially affect an

---

[5]Although Turner does not expressly argue a Fourth Amendment violation, Katz was based on this constitutional right.

expectation of privacy in a police car.  Furthermore, in addition to the status of the police vehicle, the practical realities of the situation should be apparent to occupants.  Patrol cars bristle with electronics, including microphones to a dispatcher, possible video recording with audio pickup, [6] and other electronic and recording devices.

As to his next argument, Turner contends that Officer Ryle's statements to him and Grooms that they should sit in the car for their safety created an expectation of a safe haven.  Turner argues that a police car may be used as an ambulance, a roadblock, or for other purposes, and in those varied functions, occupants would be entitled to an expectation of privacy.  We need not address those hypotheticals.  Here, Ryle was directly involved in a law enforcement function.  He made a legitimate law enforcement traffic stop [7] and conducted a proper search.  Although Ryle's actions in facilitating the recording opportunity may be problematic, under the facts of this case and the issues presented, a possible feeling of safety did not create an exception to the rule set out above.

---

[6]See e.g., United States v. Anderson, 114 F.3d 1059, 1061 n.1 (10th Cir. 1997); United States v. Dirden, 38 F.3d 1131, 1134 n.1 (10th Cir. 1994) (audio and video recordings from highway patrol video equipment admitted into evidence).  We recognize that Ryle's patrol car had no video equipment.

[7]Turner cites an unpublished Wyoming state district court, April 11, 1999, decision that suppressed a tape recording by Ryle in another traffic stop. However, the court found that the traffic stop was not legitimate.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Turner's motion to suppress.