The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jorge ZAMORA, Defendant–Appellant.

No. 08CA0219.

Colorado Court of Appeals,
Div. IV.

Sept. 3, 2009.

John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Keyonyu X. O'Connell, Denver, CO, for Defendant–Appellant.

Opinion by Judge LICHTENSTEIN.

Defendant, Jorge Zamora, appeals his judgment of conviction for first degree murder, conspiracy to commit second degree murder after deliberation, conspiracy to commit first degree murder acting with extreme indifference, and menacing. Zamora asserts the court should have suppressed his Spanish-language phone call made in police presence and his statements about a gun made to police two years before the murder. He also contends the court should have excused two members of the venire who expressed anti-gang bias. We affirm.

### I. Motions to Suppress

Appellate review of a ruling on a motion to suppress is a mixed question of law and fact.

*People v. Alameno,* 193 P.3d 830, 834 (Colo. 2008). We set aside the trial court's factual findings only if they are clearly erroneous or unsupported by the record. *Id.* We review the trial court's legal conclusions de novo. *Id.*

The United States and Colorado Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. 2, § 7. Whether a search or seizure is reasonable depends upon the reason for and the extent of the intrusion. *People v. Archuleta,* 980 P.2d 509, 512 (Colo.1999).

#### A. Telephone Statements

We reject Zamora's contention that the trial court erred in denying his motion to suppress statements he made during a phone call placed from a police interrogation room because the statements were obtained in violation of his Fourth Amendment right to privacy.

Zamora did not assert the Fourth Amendment as grounds for suppression before the trial court. Nevertheless, the court addressed the Fourth Amendment right to privacy in holding the phone statements admissible. Because Zamora did not assert a Fourth Amendment argument, we review the court's ruling for plain error. *People v. Miller,* 113 P.3d 743, 749–50 (Colo.2005). Plain error is error that is obvious and substantial. It exists when, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at 749. We perceive no error, much less plain error.

An illegal search occurs when the government intrudes on an area where a person has a constitutionally protected reasonable expectation of privacy. *Henderson v. People,* 879 P.2d 383, 387 (Colo.1994). A reasonable expectation of privacy consists of two elements: (1) whether a person has an actual subjective expectation of privacy; and (2) whether that expectation is one that society would consider objectively reasonable. *Katz v. United States,* 389 U.S. 347, 351, 88

S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Galvadon,* 103 P.3d 923, 929 (Colo.2005).

Here the trial court considered the following evidence at the suppression hearing. Zamora was in police custody and had been advised of his *Miranda* rights, which he waived. Zamora asked to call his mother during police questioning, and the detective lent Zamora his cell phone to do so. Zamora stayed seated at a table with the detective, and placed his call from inside the interrogation room. While on the phone, Zamora spoke in Spanish. Without Zamora's knowledge, the police were recording the interview, including Zamora's side of the phone conversation. At the request of the prosecution, a police interpreter translated Zamora's end of the conversation, which included him saying, "They already know everything I did," and "Should I tell them everything or what?"

The court ruled that Zamora had "absolutely no expectation of privacy on the phone" because the detective was in the room during the call and he could overhear Zamora speaking.

■ On appeal, Zamora contends that he had both a subjective and objective expectation of privacy in his phone statements because he spoke in Spanish. Assuming, without deciding, that Zamora demonstrated he had an actual, subjective expectation of privacy in his phone conversation by speaking in Spanish, we conclude that his expectation of privacy was not objectively reasonable. Objective reasonableness depends on "whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver v. United States,* 466 U.S. 170, 182–83, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). The objective reasonableness expectation is a fact-specific inquiry which takes account of all circumstances and is not tied to a single factor nor controlled by a specific formula. *People v. Oynes,* 920 P.2d 880, 882 (Colo.App. 1996); *see also People v. Tufts,* 717 P.2d 485 (Colo.1986) (whether an expectation of privacy is legitimate depends on objective factors, not the individual's subjective intent).

■ Courts consider several factors in determining the objective reasonableness of an expectation of privacy. A person generally has no reasonable expectation of privacy in communications held in the actual presence of a police officer. *People v. A. W.,* 982 P.2d 842, 848 (Colo.1999) (citing *Katz,* 389 U.S. 347, 88 S.Ct. 507); *see People v. Smith,* 716 P.2d 1115, 1118 (Colo.1986) (defendant who was accompanied to telephone by jailhouse personnel does not have a reasonable expectation of privacy in his telephone communications); *cf. People v. Hart,* 787 P.2d 186, 187–88 (Colo.App.1989) (defendant had no reasonable expectation of privacy where police officers, who were lawfully situated in an adjacent motel room, could hear his conversation without the aid of any listening device).

■ The location where statements are made is also a factor in determining whether an objectively reasonable privacy expectation exists. *People v. Lesslie,* 939 P.2d 443, 447 (Colo.App.1996). Statements made while in police car, *People v. Palmer,* 888 P.2d 348 (Colo.App.1994), or inside a jail, *People v. Blehm,* 44 Colo.App. 472, 476–77, 623 P.2d 411, 415 (1980), may not give rise to an expectation of privacy. *See also People v. Lee,* 93 P.3d 544, 548 (Colo.App.2003) (defendant did not have reasonable expectation of privacy in his telephone calls from county jail). However, statements made in a private area of a public restroom may be subject to an objective expectation of privacy. *Lesslie,* 939 P.2d at 446 (defendant had expectation of privacy within restroom because it was legitimate to assume conversation was shielded from the public).

Zamora concedes his statements were made in the detective's presence, inside an interrogation room, but he argues he had an objectively reasonable expectation of privacy because he spoke in Spanish. Similar to the defendant in *United States v. Longoria,* 177 F.3d 1179 (10th Cir.1999), Zamora urges us to recognize an expectation of privacy based on a listener's ability to comprehend Spanish. This is an issue of first impression in Colorado courts.

■ In *Longoria,* the Tenth Circuit held in part that such an expectation was not objectively reasonable in our increasingly multilingual society. *Id.* at 1183; *see also United States v. Torres,* 983 F.Supp. 1346, 1352 (D.Kan.1997) (finding no objective ex-

pectation of privacy in conversation conducted in Spanish in presence of a third person), *aff'd sub nom. United States v. Longoria,* 177 F.3d 1179. We agree. As the *Longoria* court explained, by exposing conversations to others, a person necessarily assumes the risk that his or her statements will be overheard and understood, even when they are not spoken in English. 177 F.3d at 1183 (recognizing police informant may have concealed his ability to understand Spanish).

Here, Zamora placed his call in the detective's immediate presence and spoke at a volume audible to the officer without aid of a listening device. *See Hart,* 787 P.2d at 187–88. The detective did not deliberately mislead Zamora to believe either that he could not understand Spanish or that he would not listen to his statements. *E.g., A. W.,* 982 P.2d at 848 (recognizing expectation of privacy when officer led juvenile and father to believe that no monitoring of their conversation would occur). We conclude that by exposing his conversation to the detective, Zamora undertook the risk he could be understood and, therefore, he had no reasonable expectation of privacy in those statements. *See Longoria,* 177 F.3d at 1183.

■ Zamora contends his statements should have been suppressed, however, because they could not have been understood without the aid of videotape surveillance, which was conducted without his knowledge. This added factor does not alter our conclusion. Zamora did not have an objectively reasonable expectation of privacy in not being recorded. *See United States v. Caceres,* 440 U.S. 741, 750, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (the Fourth Amendment provides no protection to an individual against the concealed recording of his conversation with a police agent). First, as noted above, Zamora's statements were made inside a jailhouse interrogation room, which does not give rise to an expectation of privacy. *See Blehm,* 623 P.2d at 415. Second, Zamora was never misled to believe his statements were not being videotaped or otherwise recorded. *See A. W.,* 982 P.2d at 848 (expectation of privacy may attach to statements obtained through electronic surveillance when a person is led to believe he or she will not be monitored or recorded). Third, even when a person is deliberately misinformed that his or her statements to police are not being videotaped, that person does not automatically have an objectively reasonable expectation of privacy in those statements when they are made, as they were here, in police presence. *See id.*

Taking into account all of the circumstances under which Zamora made his Spanish-language statements, we find no error in the court's denial of his motion to suppress the statements he made while on the phone.

### B. Gun and Related Statements

■ We also reject Zamora's contention that the trial court erred in denying his motion to suppress (1) evidence that the serial number of his gun matched the serial number of a gun found in connection with the shooting in this case, and (2) his statements to police that he never loaned his gun to anyone.

Two years before the shooting in this case, two police officers encountered Zamora in a parking lot with a group of approximately thirty people. While the officers were talking to some persons in the group, one of the officers noticed a magazine loaded with .40 mm bullets in the console of an SUV. In response to the officer's inquiry, Zamora identified himself as the driver of the SUV and told the officer the matching gun was in the glove compartment. The officer told Zamora that he was investigating a gang shooting involving .40 mm shell casings and that he would like to test Zamora's gun for a match. Zamora gave the officer permission to take the gun and told him the gun had never been used in a shooting, he never loaned it out, and he kept it for protection from rival gang members.

The officer took the gun for a few weeks before releasing it to Zamora. While the gun was in police custody, the police recorded its serial number but did not test it.

After the shooting in this case, the police found several guns near an onion processing facility, which they believed were used in the shooting. The serial number of one of these guns matched the earlier-recorded serial number of Zamora's gun.

Prior to trial, Zamora moved to suppress the gun, its magazine, and any statements he made during the encounter in the parking lot. The trial court found the police had obtained the gun with Zamora's permission during a consensual encounter and denied the motion after applying the factors enumerated in *People v. Jackson,* 39 P.3d 1174 (Colo.2002), *abrogated in part on other grounds by Brendlin v. California,* 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

Zamora's gun and magazine were admitted into evidence. An expert testified that in his opinion the shell casings found at the scene were fired from Zamora's gun. Zamora's statement that he never loaned the gun to anyone was also admitted.

Zamora does not challenge the court's finding that the encounter was consensual. Instead, he argues that because the police were not carrying out an investigation when they seized the magazine, its seizure was not justified by the "plain view" exception to the warrant requirement. Consequently, Zamora argues the magazine's illegal seizure vitiated his consent to seizure of the gun, and both items and his statements should have been suppressed.

■ "Appellate review of a suppression ruling is limited to the legal bases set forth in the district court's ruling." *People v. Inman,* 765 P.2d 577, 578 (Colo.1988); *accord People v. Russom,* 107 P.3d 986, 991 (Colo. App.2004).

We refrain from deciding whether the police engaged in an illegal seizure and whether such seizure vitiated Zamora's consent because Zamora did not raise these issues in the trial court, and the court made no express findings of fact regarding them. *Inman,* 765 P.2d at 578; *Russom,* 107 P.3d at 991. Therefore, this aspect of the suppression order is affirmed.

## II. Juror Challenges

Zamora contends the trial court erred in denying his challenges for cause to two prospective jurors who exhibited a bias against gangs. We are not persuaded.

### A. Law

■ The trial court must grant a challenge for cause if a prospective juror demon-strates a bias against the defendant or the state. § 16–10–103(1)(j), C.R.S.2008. The test applied in determining whether a prospective juror should be dismissed for actual bias is whether the person would render a fair and impartial verdict based on the evidence presented at trial and the instructions given by the court. *People v. Lefebre,* 5 P.3d 295, 301 (Colo.2000); *see* § 16–10–103(1)(j) (providing that a prospective juror shall not be disqualified "if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial").

■ We review a trial court's denial of a challenge for cause for an abuse of discretion. *Carrillo v. People,* 974 P.2d 478, 485 (Colo.1999). We give great deference to the trial court's assessment of the credibility of a prospective juror's responses. *Id.* at 485–86. The trial judge is the only judicial officer able to assess fully the attitudes and state of mind of a potential juror by personal observation of the significance of what linguistically may appear to be inconsistent or self-contradictory responses to difficult questions. *People v. Sandoval,* 733 P.2d 319, 321 (Colo.1987); *People v. Honeysette,* 53 P.3d 714, 719 (Colo.App.2002).

■ To determine whether the trial court abused its discretion, we must review the entire voir dire of the prospective juror. *Carrillo,* 974 P.2d at 486. Where there is support in the record for the trial court's determination that the potential juror would decide the case on the facts and would apply the presumption of innocence, we will affirm the trial court's denial of a challenge for cause. *People v. Young,* 16 P.3d 821, 824–25 (Colo.2001).

### B. Juror C.G. (Venireperson 3422)

■ Zamora challenged Juror C.G. for cause, because she indicated she did not like gangs and she would be sympathetic toward the victim's family.

The court asked Juror C.G. if her sympathy would make it more likely for her to find Zamora guilty or if she would presume him innocent unless the prosecutor proved his

guilt beyond a reasonable doubt. She responded, "Well, I would think that whatever the facts are raised in the courtroom, that would be what to look at." The court then asked Juror C.G. if she would to follow the law or her sympathy, and she responded, "Follow the law."

When asked about her anti-gang bias, she responded that the focus of the trial was about what happened to the victim, not about gangs. Although she admitted that gangs made her uncomfortable, she stated she would make her decision based on the evidence and indicated she would only find Zamora guilty if the evidence demonstrated he committed a crime. The court denied Zamora's challenge.

Having reviewed the entire record of the voir dire of Juror C.G., we conclude that the trial court did not abuse its discretion when it determined that she could be fair and impartial. *See Sandoval,* 733 P.2d at 321. Here, she stated she would follow the law and not her sympathy. She acknowledged she would base her decision on the evidence and would only find Zamora guilty if the evidence supported his guilt. Accordingly, we will not disturb the court's determination upon appeal. *See Young,* 16 P.3d at 824–25.

### C. Juror N.B. (Venireperson 3449)

 Zamora challenged Juror N.B. for cause contending she (1) did not understand the prosecution's burden, as demonstrated by her expectation of hearing from defense witnesses, and (2) she expressed an anti-gang bias.

The court denied Zamora's challenge upon finding (1) there was no evidence that N.B. would shift the burden to Zamora, and (2) although she had an anti-gang bias, she would require the prosecution to prove Zamora's guilt beyond a reasonable doubt. In reaching its findings, the court considered N.B.'s demeanor and found her responses to be thoughtful and truthful.

Having reviewed the entire record of the voir dire of Juror N.B., we conclude the trial court did not abuse its discretion when it determined that she could be fair and impartial. *See Sandoval,* 733 P.2d at 321. Juror N.B. affirmatively indicated her understanding that the defendant did not have the bur-

den to prove his innocence. She also assured the court she would follow its instructions and would not find Zamora guilty unless the prosecution proved his guilt beyond a reasonable doubt. Accordingly, we will not disturb the court's determination upon appeal. *See Young,* 16 P.3d at 824–25.

The judgment is affirmed.

JUDGE WEBB and JUDGE CARPARELLI concur.