**UNITED STATES of America,
Plaintiff,**

v.

**Harold WELLS, Nick Debruin, and
Ernest Bruce Bonham,
Defendants.**

**No. CR 10–116 BDB.**

United States District Court,
N.D. Oklahoma.

May 12, 2011.

Jane W. Duke, United States Attorney's Office, Little Rock, AR, for Plaintiff.

Julia Lynn O'Connell, Federal Public Defender's Office, Shannon Michelle McMurray, Shannon M. McMurray Law Office, William Dixon Lunn, Tulsa, OK, for Defendants.

### MEMORANDUM OPINION AND ORDER

BRUCE D. BLACK, Chief Judge.

THIS MATTER comes before the Court for consideration of several motions to suppress filed by all three Defendants (Docs. 112, 120, 122, 129, 156). The Court held a hearing on these motions and other motions on May 2, 2011. Based on the arguments contained in the parties' briefs and the arguments provided at the May 2 hearing, the motions to suppress will be denied.

The motions to suppress concern videotapes and audiotapes obtained as a result of a "sting" operation conducted by the federal government. At the time of the operation Defendants were police officers employed by the city of Tulsa, Oklahoma. An officer other than Defendants was suspected of stealing money and drugs from various individuals who had been detained or arrested on charges of drug-dealing. In order to investigate this officer, FBI agents set up the sting operation. An unidentified individual informed the suspect officer that a drug dealer carrying a large amount of controlled substances, and presumably a large amount of cash, was coming into Tulsa from a different city and would be staying at a certain motel in Tulsa. The "drug dealer" was in fact an undercover officer working for the FBI. A motel room was rented in the name of the undercover officer, and the room was "bugged" with several video/audio recording cameras. No warrant was obtained prior to the bugging or at any time thereafter.

While the undercover officer was staying at the motel, the suspect officer, Defendants, and other Tulsa police officers arrived at the motel. The undercover officer left his room at some point, at which time he was detained by law enforcement officers, who obtained written consent from the undercover officer to search his room. The suspect officer and one Defendant entered the room in the absence of the undercover officer, to be joined later by another Defendant and, at various times, other officers. Their activities in the room need not be detailed; suffice it to say the Government believes the video and audio tapes contain evidence of incriminating behavior. In addition to recording Defendants' and other officers' activities and conversations taking place during the undercover officer's absence from the room, the video and audio surveillance also recorded activities and conversations that occurred after the undercover officer had been brought into the room. Defendants have moved to suppress the video and audio recordings obtained as a result of the warrantless electronic surveillance of the motel room. These recordings constitute a portion of the evidence the Government wishes to present against Defendants, who have been charged, *inter alia,* with conspiracy to steal funds belonging to the Government, as a result of activities that took place in the undercover officer's motel room.

## DISCUSSION

### Undercover Officer's Presence in the Room

Defendants do not challenge admission of the recordings to the extent they depict periods of time during which the undercover officer was present in the room. This concession is in line with pervasive case law holding that while an informant who has consented to the recording is present, video and audio surveillance of a hotel room or other premises is not prohibited by either the Fourth Amendment or federal statute. *See United States v. Lee,* 359 F.3d 194, 201–03 (3d Cir.2004); *United States v. Nerber,* 222 F.3d 597, 604 (9th Cir.2000); *United States v. Longoria,* 177 F.3d 1179, 1184 (10th Cir.1999); *United States v. Yonn,* 702 F.2d 1341, 1347 (11th Cir.1983) (no Fourth Amendment distinction between an informant using a motel room bug or wearing a wire).

### Video Surveillance Versus Audio Surveillance

A federal statute ("the wiretap statute") regulates the interception and recording of audio communications, as well as the admissibility of such recordings into evidence in a judicial proceeding. Title III, 18 U.S.C. §§ 2510–20. No such statute applies to video surveillance and recording. *See United States v. Larios,* 593 F.3d 82, 91 (1st Cir.2010); *United States v. Taketa,* 923 F.2d 665, 675 (9th Cir.1991). Instead, video surveillance is governed by the strictures of the Fourth Amendment. *United States v. Mesa–Rincon,* 911 F.2d 1433, 1437 (10th Cir.1990). However, with respect to the crucial question in this case, there is no difference in analysis between the wiretap statute and the Fourth Amendment. This is because the wiretap statute applies only to communications that are made while the communicator has exhibited "an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). That phrase has been construed by the Tenth Circuit and other courts to mean the wiretap statute is the equivalent of the Fourth Amendment with respect to the communications it protects. *See Larios,* 593 F.3d at 92; *Longoria, supra,* 177 F.3d at 1181–82. In other words, if the communicator has no constitutionally reasonable expectation of privacy at the time the communication is made, the communication will not be sub-

ject to the wiretap statute. Similarly, of course, video surveillance will not run afoul of the Fourth Circuit if the individual whose actions are being recorded has no reasonable expectation of privacy at the time of the surveillance. *See, e.g., Nerber, supra,* 222 F.3d at 604. For purposes of this case, therefore, there is no difference in analysis between the audio surveillance and the video surveillance; the dispositive issue is whether Defendants had a reasonable expectation of privacy in the undercover officer's hotel room, while the undercover officer was not present.

**Reasonable Expectation of Privacy**

■ Courts agree that an individual's reasonable expectation of privacy can vary depending on the nature of the government's conduct. *See Larios,* 593 F.3d at 94; *Nerber,* 222 F.3d at 603. That is, the Fourth Amendment will be applied more strictly to protect individuals where the government utilizes more intrusive methods of performing searches. *Id.* Video and audio surveillance are highly intrusive forms of investigative mechanisms and, for that reason, have been subjected to a high level of scrutiny under the Fourth Amendment and the wiretap statute, with video surveillance deemed even more intrusive than audio "bugging." *See Nerber,* 222 F.3d at 603–05; *Mesa–Rincon,* 911 F.2d at 1442–43. However, neither video nor audio surveillance automatically violates the Fourth Amendment; when such surveillance is conducted in a public place such as a bank, where no reasonable expectation of privacy exists, the surveillance is not subject to suppression. *See Taketa, supra,* 923 F.2d at 677; *see also United States v. Vankesteren,* 553 F.3d 286, 291 (4th Cir. 2009) (video surveillance of defendant's open field, where he had no reasonable expectation of privacy, did not violate Fourth Amendment). The Court will bear in mind this heightened level of protection against audio and especially video surveil-

lance, in deciding the reasonable-expectation-of-privacy question.

■ The test for determining whether a reasonable expectation of privacy exists for a particular Defendant in a particular location is two-fold: first, the defendant must establish that he "had an actual, subjective expectation of privacy-i.e., that his communications were not subject to interception[.]" *Longoria, supra,* 177 F.3d at 1181–82. Second, the defendant's expectation must be one "society would objectively consider reasonable." *Id*

■ The Court accepts that Defendants had an actual or subjective expectation of privacy in the motel room while they were alone in the room. As evidenced by their alleged actions, they did not expect anyone to be conducting surveillance, and did not think anyone was observing them through any means, electronic or otherwise. The crucial issue in this case is whether Defendants' subjective expectation of privacy is one society would accept as objectively reasonable. As discussed below, the Court finds against Defendants on this point. An analysis of the applicable case law, especially Tenth Circuit case law, leads to that conclusion. Furthermore, public policy considerations militate against finding a reasonable expectation of privacy under the circumstances of this case.

**A. Case Law Analysis:** Defendants' position finds most support in the case upon which they rely heavily, *United States v. Nerber, supra.* In *Nerber,* the Ninth Circuit determined that individuals who had come to a "bugged" hotel room, occupied by confidential informants, in order to consummate a drug transaction, had a reasonable expectation of privacy in the room once the confidential informants had left the premises. 222 F.3d at 604. The video surveillance tapes of the room were therefore suppressed for the entire period of time following the departure of the in-

**1274**

formants. In so holding, the Ninth Circuit acknowledged *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), in which the Supreme Court held that individuals in someone else's home, who were there for only a few hours and only to perform a commercial transaction, had no expectation of privacy in that home. 525 U.S. at 91, 119 S.Ct. 469. The Ninth Circuit, however, impliedly accepted the district court's (and defendants') argument that *Carter* was distinguishable because the government's method of investigation in *Carter*, peeking through a window, was purportedly much less intrusive than the video surveillance used by the government in *Nerber*.[1]

There is a crucial difference between Defendants' position in this case and the position of the defendants in *Nerber*. In *Nerber* the defendants were guests invited into the hotel room by the informants, albeit for commercial purposes. They were there for a purpose that was ostensibly of benefit both to them and to the informants. In this case, on the other hand, Defendants obtained access to the room not as guests, but as law enforcement officers using the power of the state to obtain consent from the room's occupant. Defendants cannot be considered guests, either social or commercial, of their target, the undercover officer. This is an important point under Supreme Court jurisprudence. When an individual claims an expectation of privacy in someone else's residence, hotel room, or other premises,

the Supreme Court has required that the individual demonstrate some type of societal recognition of the value of the individual's privacy rights in that particular situation. *See, e.g., Minnesota v. Olson*, 495 U.S. 91, 98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (holding that an overnight guest in a residence had a reasonable expectation of privacy in that residence, because "[s]taying overnight in another's home is a long-standing social custom that serves functions recognized as valuable by society.") *Id.*

The Supreme Court in *Minnesota v. Carter, supra*, analyzed this requirement as a spectrum of privacy rights. 525 U.S. at 91, 119 S.Ct. 469. On one end of the spectrum are overnight guests, who are entitled to share in the Fourth Amendment protection granted to individuals in their own homes, hotel rooms, etc. On the other end are individuals who are merely "legitimately on the premises;" such individuals have no expectation of privacy at all that society is prepared to recognize as reasonable. *Id.* Somewhere in between, according to *Carter*, are individuals who are on the premises at the invitation of the resident but are merely there to perform a commercial transaction. *Id.* Here, rather than being invited social or even commercial guests of the undercover officer, Defendants were merely "legitimately on the premises" of the undercover officer's motel room. Due to the intrusive nature of video surveillance, the *Nerber* court was able to

---

1. The Court uses the phrase "impliedly accepted" because the *Nerber* opinion does not address *Carter* at all in its discussion of the defendants' reasonable expectation of privacy in the informants' hotel room. The only mention of *Carter* occurs in the section of the opinion holding that the severity of the government's intrusion can be considered in deciding whether a reasonable expectation of privacy exists. 222 F.3d at 600–01. However, the only possible basis *Nerber* could have had to distinguish *Carter* was to accept the

district court's argument. Except for the nature of the government's investigative mechanism, the two cases are quite congruent with respect to their relevant facts. In both cases the defendants were in someone else's residence, temporary or otherwise; they were there for comparable periods of time; and they were there for the same commercial purpose, a drug transaction. *See Nerber, supra*, 222 F.3d at 606 (Gould, J., dissenting, and pointing out close similarity of facts in *Carter* and facts in *Nerber*).

stretch the expectation of privacy to cover commercial guests in a hotel room, despite *Carter's* disparagement of such guests' privacy rights. Even under *Nerber*, however, the expectation of privacy cannot be stretched to the extreme end of *Carter's* spectrum, to individuals who are not guests of any kind but are simply legally on the premises. This is true despite the intrusive nature of surreptitious audio and video surveillance.

Defendants also rely heavily on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Katz* the Supreme Court held that electronically eavesdropping on a telephone call made from a public telephone booth violated the defendant's Fourth Amendment rights. *Katz* famously stated that "the Fourth Amendment protects people, not places" and added that what an individual "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.*, 389 U.S. at 351, 88 S.Ct. 507. Defendants argue, in essence, that a motel room should be given just as much protection as a public telephone booth, and that warrantless video or audio surveillance of such a room should not be countenanced. However, a public telephone booth is different than a motel room that "belongs" to someone else, at least temporarily. Under societal norms, a public telephone booth belongs to no one individual until it is occupied by a person. At that point, the occupier is at least temporarily in sole control of the premises, in somewhat the same way a guest of a hotel is in sole control of his own room (with some limitations, of course, due to the rights of management to enter the room for various reasons). In that sense, the defendant in

*Katz* was not occupying premises that legally "belonged" to a different individual. On the other hand, Defendants in this case did occupy someone else's premises, not their own. It makes sense that society would reject their right to privacy in premises to which they had not been invited as guests and had no ownership or residence rights. In sum, there is a crucial difference between premises one is entitled to occupy at one's own initiative, and premises one may only occupy at the invitation or with the consent of another person.[2]

The Court also recognizes that the Tenth Circuit has not been liberal in recognizing the privacy rights of individuals found in hotel rooms that were not rented in their names. The Tenth Circuit has insisted that such individuals present evidence establishing they are guests of the renter, rather than individuals merely present on the premises. *See, e.g., United States v. Rios*, 404 Fed.Appx. 258 (10th Cir.2010, unpublished) (defendant was found alone in locked motel room registered to someone else; this failed to demonstrate that he was an invited guest of the registered renter, and defendant therefore could not claim the protection of the Fourth Amendment); *United States v. Conway*, 73 F.3d 975, 979–80 (10th Cir. 1995) (individual found completely undressed in motel room, in possession of a key, had not demonstrated more than that he was merely in physical control and possession of the room; to be entitled to Fourth Amendment protections, individual had to demonstrate at minimum that he was an invited guest of the renter of the room). In addition, the Tenth Circuit has taken to heart the distinction in *Carter* between social guests and commercial

---

2. The Court would also point out that to the extent *Katz* could be construed to say that an individual carries his right to privacy from surveillance around with him wherever he goes, and can assert it anywhere and anytime

he takes possession of certain premises, subsequent Supreme Court cases such as *Carter* and *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), have precluded such an expansive construction.

guests. The Tenth Circuit, in line with *Carter*, grants little Fourth Amendment protection to individuals who are merely commercial guests. *See, e.g., United States v. Poe*, 556 F.3d 1113, 1121–22 (10th Cir.2009) (individual who was social guest of resident had a reasonable expectation of privacy in resident's home because he demonstrated the requisite "degree of acceptance" into the household, unlike the commercial guests in *Carter*); *United States v. Rhiger*, 315 F.3d 1283, 1286 (10th Cir.2003) (social guest had reasonable expectation of privacy in host's residence because such a guest has a degree of acceptance into the household that a commercial visitor does not).

■ The Tenth Circuit has thus denigrated commercial invitees' privacy rights in someone else's premises, and has emphasized a guest's degree of acceptance into a resident's household in deciding whether to recognize a reasonable expectation of privacy in someone else's premises. This indicates the Tenth Circuit would look askance at Defendants' claimed expectation of privacy in the undercover officer's motel room, as they did not qualify as even commercial guests and had absolutely no acceptance into the undercover officer's "household." [3] **Public Policy:** Commercial/social guest status and caselaw analysis aside, the ultimate question in any determination concerning the existence of a reasonable expectation of privacy involves a societal value judgment. *See United States v. Johnson*, 584 F.3d 995, 1000 (10th Cir.2009). This is inherent in the second prong of the expectation-of-privacy test, whether a particular expectation is one that society would accept as

reasonable. There are many instances of courts refusing to recognize an expectation of privacy because to do so would contravene societal interests. *See id.* at 1004 (refusing to recognize an expectation of privacy in a storage shed that had been rented under a name obtained by identity theft, as that would in effect make the court a party to the fraud); *see also United States v. Ward*, 561 F.3d 414, 417–18 (5th Cir.2009) (escapee from prison had no reasonable expectation of privacy in his motel room; recognizing such an expectation would offer judicial encouragement to the act of escape); *United States v. Caymen*, 404 F.3d 1196, 1200–01 (9th Cir.2005) (defendant had no reasonable expectation of privacy in laptop he had fraudulently purchased using another's financial information). The circumstances of this case are not such that a reasonable expectation of privacy should be recognized by society.

■ At oral argument and in subsequent briefing Defendants emphasized the fact that they had obtained exclusive dominion and control over the motel room, which is one factor discussed in expectation-of-privacy cases. However, the only reason Defendants were able to obtain such exclusive dominion and control was their status as law enforcement officers. Defendants and/or other officers detained the undercover officer and kept him out of the room for a number of minutes after obtaining consent to search. Both the detention of the undercover officer outside the room, and the ability to obtain consent to search, were made possible only because Defendants and the other police officers were law enforcement officers carry-

---

3. In fact, while the Court need not decide the matter, Tenth Circuit precedent indicates the Tenth Circuit would have decided the *Nerber* case differently than did the Ninth. It is more likely the Tenth Circuit would have agreed with the *Nerber* dissent. Indeed, this Court perceives the validity of Judge Gold's statements that *Minnesota v. Carter* should have controlled the result in *Nerber*, and that "[t]hose who would hatch illicit plots to traffic in drugs while brandishing firepower should rent their own rooms." 222 F.3d at 607.

ing out the authority of the state. It would be incongruous to allow police officers to use their authority to obtain exclusive control of someone else's premises, and then allow them to be protected from governmental scrutiny, clandestine or otherwise, of their activities while they exercise such state-authority-derived exclusive control. Police officers are public officials and are thus expected to carry out their duties openly and subject to the reasonable scrutiny of the citizens they serve.[4] This should be especially true where, as here, the officers have divested a citizen of his rightful control over certain premises, in order to conduct their state-authorized activities.

█ Put another way, the purpose of the Fourth Amendment is to shield citizens from overreaching by government officials. If law enforcement officers are granted a reasonable expectation of privacy while they are carrying out searches of citizens' property, and are thus not subject to surreptitious oversight, such overreaching would be encouraged, or at least protected. As a result, all manner of Fourth Amendment violations could be committed without repercussions for the law enforcement officers. This case in fact is a good example. Defendants are accused of planning to steal money from a private citizen while they carried out a search of that citizen's premises. No expectation of privacy should be recognized that would allow Defendants, or any other law enforcement officers, to carry out such

alleged activities in secret. Instead, while exercising the authority granted them by the state to enter other persons' premises, officers should expect to be monitored to ensure they use this great power in a manner that strictly comports with the requirements of the Fourth Amendment. In sum, the Court can conceive of no constitutional or societal interest that would be served by allowing Defendants to claim a reasonable expectation of privacy in the motel room rented by the undercover officer.

### Conclusion

As discussed above, there are two significant factors militating against a recognition of a reasonable expectation of privacy in this case. First, Defendants were not invited guests of the undercover officer in any way, shape, or form. Second, they were able to obtain exclusive access to the premises only because of their status as law enforcement officers and their concomitant authority to both exclude the undercover officer from the premises and obtain his consent to a search of the premises. Under applicable case law and important principles of public policy, Defendants' attempt to assert an expectation of privacy over the undercover officer's motel room must be rejected.

### ORDER

Based on the foregoing Memorandum Opinion, it is ORDERED that Defendants'

---

4. For example, several courts have recognized that citizens have a First Amendment right to videotape officers who are performing their duties in a public location, as long as the citizen does not interfere in those duties. See, e.g., Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir.2000); Robinson v. Fetterman, 378 F.Supp.2d 534, 541 (E.D.Pa.2005). Other courts note that police officers' privacy rights are often superseded by the public's right to be informed about the manner in which officers carry out their public duties. See, e.g., Cassidy v. American Broadcasting Cos., Inc., 60 Ill.App.3d 831, 17 Ill.Dec. 936, 377 N.E.2d 126, 131 (1978), quoting Coursey v. Greater Niles Twp. Publ. Corp., 40 Ill.2d 257, 239 N.E.2d 837, 841 (1968) (police officer's duties are "highly charged with the public interest" because, in part, "[t]he abuse of a patrolman's office can have great potentiality for social harm ...").

motions to suppress (Docs. 112, 120, 122, 129, 156) be, and hereby are, DENIED.